## Case No. 14,497.

### UNITED STATES v. BAINBRIDGE.

[1 Mason, 71; 2 Wheeler, Cr. Cas. 521.] [1]

Circuit Court, D. Massachusetts. June 22, 1816.

NAVY—ENLISTMENT OF MINORS—CONSENT OF FATHER—INFANTS.

1. Congress have a constitutional power to enlist minors, in the navy or army, without the consent of their parents.

[Cited in U. S. v. Garlinghouse, Case No. 15,-189; Re Davison, 21 Fed. 618; Re Cosenow, 37 Fed. 670; In re Morrissey, 137 U. S. 159, 11 Sup. Ct. 57.]

[Cited in Re Gregg, 15 Wis. 480; McConologue's Case, 107 Mass. 166; U. S. v. Blakeney, 3 Grat. (Va.) 424. Distinguished in dissenting opinion in U. S. v. Blakeney, Id. 430. Cited in U. S. v. Cottingham, 1 Rob. (Va.) 615.]

2. Under the navy acts, the consent of the father is not necessary to the valid enlistment of boys in the service.

[Cited in Re McLave, Case No. 8,876; Re McNulty, Id. 8,917; Re Doyle, 18 Fed. 371.]

[Distinguished in Com. v. Downes, 24 Pick. 232. Cited in Halliday v. Miller (W. Va.) 1 S. E. 832; State v. Dimick, 12 N. H. 198; Wright v. Steele, 2 N. H. 55.]

3. Of the nature and extent of the paternal power at common law.

[Cited in Hammond v. Corbett, 50 N. H. 509.]

---

[1] [Reported by William P. Mason, Esq. 2 Wheeler, Cr. Cas. 521, contains only a partial report.]

[4. Cited in Halliday v. Miller, 29 W. Va. 438, 1 S. E. 821; Hollingsworth v. Swedenborg, 49 Ind. 381; Johnson v. Dodd. 56 N. Y. 81; Kelly v. Sprout, 97 Mass. 170; and Mears v. Bickford, 55 Me. 529,—to the point that a father is not entitled to pay earned by his minor son as a soldier.]

[5. Cited in Elliott v. Horn, 10 Ala. 348, and People v. Moores, 4 Denio, 520, to the point that infants are bound by all acts which they are obliged by law to do.]

[6. Cited in Williams v. Hutchinson, 3 N. Y. 320. and cited in brief in Thompson v. Hamilton, 12 Pick. 427, to the point that an infant may enter into a binding contract which is clearly for his benefit.]

Habeas corpus to Commodore [William] Bainbridge to bring up the body of Robert Treadwell, an infant, of the age of twenty years, and about eleven months. By the return of the habeas corpus, and the other proceedings, it appeared, that he was born in Ipswich, on the second day of August, 1795; that in the month of May, 1815, he enlisted into the navy of the United States, to serve two years; that, after this enlistment, he deserted from the service, and, having been apprehended, was on the nineteenth day of June last past, brought to trial on the charge of desertion before a regular court martial, and, having pleaded guilty to the charge, was, by the sentence of the court, among other things, ordered to serve in the navy of the United States the term of two years from the said nineteenth day of June, and to forfeit all the wages then due to him. He has a father who is still living, and now absent at sea; and who, previous to his departure, sued out a habeas corpus for the liberation of his son, but it failed, from the return of the officer to whom it was directed, that the infant was not in his custody. It was alleged in the affidavits and petition, that the enlistment was without the consent of his father.

Mr. Simmons, in behalf of the petitioner.

Mr. Aylwin, in behalf of Commodore Bainbridge.

Mr. Simmons. Robert Treadwell, having a father living, enlisted into the navy without his consent. They now, both of them, wish to avoid the contract of Robert the minor, and obtain his discharge from the service. Is this contract avoidable?

(1) Congress have no power to pass an act, authorizing the enlistment of minors, without the consent of their fathers. Congress have no power, except that delegated to them in the constitution; and all that is not expressly delegated, is reserved by the states. The constitution gives congress power "to provide and maintain a navy, and to make rules for the government and regulation of the same." All the authority here delegated may be exercised, without any encroachment on the common law rights and relations of parent and child. Those rights and relations, are of as solemn a nature, and as important to be preserved, as contracts.

(2) Congress have passed no act, authorizing the enlistment of a minor in the navy without the consent of his father. It is admitted, that the acts of congress relative to the navy, suppose the employment of boys. The mode of obtaining them must be by enlistment, as no compulsory process, or general requisition, is enacted. Enlistment is a contract entered into by the United States on one part, through the agency of their recruiting officers, and the minor, or the father, or both, on the other part; but by the common law, an infant, under the age of twenty-one years, is rendered incapable of binding himself by contract, except in special cases, as for necessaries, &c. This case is not an exception to the general inability to contract. It was not an undertaking to do, what he was bound to do by law, for it was optional, whether he would enlist or not. It was not a contract for his benefit; the situation of a boy in the navy, qualifying himself for the duties of an ordinary seaman, cannot be considered beneficial, either to his moral or physical habits, promising neither honor nor riches. Neither do the cases of beneficial contracts, that are binding on infants, relate to that general and uncertain benefit, that may be supposed to result from any particular situation, or occupation, but to contracts relating to real estate and specific property. Zouch v. Parsons, 3 Burrows, 1794. This contract, then, is not an exception from the general rule, and not binding on the infant, but the father is the natural guardian of the son, and has a right to control his person, and dispose of his services and labor; the consent of the father is, therefore, necessary to render the contract valid. In this case, the consent of the father was not given. Is this inability of the minor, or are these rights of the parent taken away by the acts of congress? No words to that effect are used, and it must be by implication, if at all; and such construction is unwarrantable, because it is unnecessary, in order to carry the statutes into effect. Boys may be enlisted by the consent of the father, and the contract is valid; therefore, where no such consent appears, the contract is voidable. But it is said, that the minor having been convicted of desertion by a naval court martial, and, among other things, sentenced to two years' labor in the navy, is barred from having his discharge; because it would annul the sentence of the court-martial. He was there tried for desertion, and, while in the navy, and his enlistment prima facie binding, he was undoubtedly bound to obey the rules and regulations of the navy, and subject to punishment for any violation of them; it is a consequence of his contracts being merely voidable, at his, or his father's instance. The question before this court is the validity of his enlistment; and if he be discharged, the annulling of the sentence of the court martial is only an incidental consequence. It never could have been intended by congress, that the officers of the navy, who appear to be almost a party, should settle a question of this description, especially where the father

is interested, and has no notice, and is not heard at the trial. This question must be determined by investigating the power delegated to congress by the constitution, a legal construction of their acts, and the principles of the common law, relative to parent and child, for which a naval court martial cannot be supposed competent, and to determine which, they are not authorized. I have not, been able to find any cases in ·point in the English books. In the criminal courts of England, indictments are sustained against indented apprentices for enlisting into the army or navy, and thereby fraudulently obtaining the king's money; from which I infer, they may be reclaimed by their master after enlistment.

Mr. Aylwin contended:

(1) That the contract, as made by the minor, was a valid one.

(2) That if it was in the power of the minor to avoid it, yet that could not be done after he had been legally sentenced by a court martial.

The authority given by the constitution to congress, for the purpose of raising a navy, must necessarily invest congress with all such powers as are indispensably requisite for effecting that purpose. If, then, the ·nature of the naval service is such, as to require, that the individuals who are employed in it, should become acquainted with its duties at an early period of life, it must follow of course, that congress are empowered by the constitution to authorize the enlistment of minors. In pursuance of this authority we find, that all the acts of congress, upon this subject, make particular mention of the enlistment of boys. That it was the intention of congress, that this enlistment should be effected without the previous consent of the parents, is evident from their having inserted express clauses in the acts relating to the army (in which it is to be remarked an early apprenticeship is not essential) for the purpose of protecting the rights of parents and masters. If the construction contended for is not given to these acts, then the provisions in them, respecting boys, are perfectly idle; for surely parents and masters are not authorized by the common law to bind out their children, or apprentices, to a military service.

But it may be observed, that the premises assumed by the applicant, for a discharge, are not founded in fact, or, at least, do not appear in evidence. In this case there is no evidence, that the father did dissent to the enlistment of his son; nor is there, at this moment, ·any proof that the father now wishes his discharge. The writ of habeas corpus must be considered as sued out by the minor, and his peculiar rights and privileges are alone to be regarded.

It is conceded, that an infant is protected by the common law from all improvident and unnecessary contracts, but all others he is at liberty to enter into; therefore he may contract matrimony, take the oath of allegiance, and, in short, "do all things necessary for the public· good." Com. Dig. tit. "Enfant." B, 6. Throughout the whole system of our laws it appears, that beneficial contracts may be made by minors, and even where a certain class of permitted contracts has been subsequently deemed injurious, the legislature has, from time to time, been obliged to interfere and limit the powers of minors. Thus, the general right of contracting matrimony was limited in England, by the statute of 26 Geo. II. But no such limitation has been enacted in relation to serving the public; and, in England, minors may be compelled to serve in the navy; nor was it until the statutes of 2 and 3 Anne, c. 6, § 15; 4 Anne, c. 19, § 17; and 13 Geo. II. c. 17, that they were exempted, during their apprenticeship, and then only for the term of three years. No court of justice ought to suffer it to be promulgated, that a contract to serve the public is not a beneficial contract. It is, to be sure, denied by the counsel for the minor, to be for his benefit, but is it not for the public good? Without condescending to investigate, whether the most honorable and useful of all services can be for the advantage of a minor, it is sufficient to render it obligatory, that this was entered into voluntarily, and is for the public good.

It being established on general principles, that contracts of this description may be entered into by minors, and particularly where the rights of others are not infringed; do the circumstances of this case form any peculiar exception? Whatever might have been the power of the parent over his child in England anciently, it has been long settled, as laid down by Blackstone, "that the father may have, indeed, the benefit of his children's labor, while they live with him and are maintained by him; but this is no more than he is entitled to from his apprentices or servants." 1 Bl. Comm. 453. This individual was suffered by his father to roam at large, and gain his sustenance where he could. He sent him into the world with his implied, if not his express assent to render valid any of his engagements, at least, for his support and education; it is now too late, did he interpose and withdraw this assent, to say that such engagements were invalid. Being thus at large, the infant may certainly make contracts in relation to the disposition of his person; and if beneficial at the time, they must bind him. Maddon v. White, 2 Term R. 159. It may be added, that at the common law, the parent had no right to dispose of the person of his child; and it was not until the 12 Car. II. c. 24, that he acquired the right of disposing of the custody of him by will. The sentence of the court martial, it is contended, places this question, however, on a different ground. Assuming for the sake of the argument, that this contract was voidable by the minor, but by him

alone (Keane v. Boycott, 2 H. Bl. 511), yet he did not, during his engagement with his government, make known his intention to avoid it by any legal proceedings, or any legal act whatever. And it cannot be doubted, that to enable a party to avoid a contract with the government, some such act or proceeding is indispensable. It appears in this case, on the contrary, that the minor, by a clandestine departure, committed a crime not only against positive law, but against his oath, which bound him to fulfill that law. He is, therefore, now held, not by virtue of his original engagement, strictly speaking, but by the sentence of a competent tribunal, in consequence of the crime that he committed. If his original contract with his country was an invalid one, he ought to have pleaded the disability which rendered it such, at the time he was arraigned. Not having then done it, he must be presumed to have waived his rights, by pleading guilty before the court martial. It was the gist of his defence, that he was not legally bound to serve the United States; unless he was, he could not have been guilty of desertion. The decision, therefore, of that court, having jurisdiction, must be conclusive upon all the world; it cannot, in this collateral manner, be investigated or reversed.

STORY, Circuit Justice. The first question is, whether the contract of enlistment, supposing it to have been made without the consent of the father, is valid or not. By the common law, the father has a right to the custody of his children during their infancy. In whatever principle this right is founded, whether it result from the very nature of parental duties, or from that authority, which devolves upon him, by reason of the guardianship by nature, or nurture, technically speaking, its existence cannot now be brought into controversy. Ex parte Hopkins, 3 P. Wms. 151; Co. Litt. 88, and Hargrave's notes; Rex v. De Manneville, 5 East, 222; De Manneville v. De Manneville, 10 Ves. 52; 1 Bl. Comm. 452, 461. This right, however, is not unlimited; for whenever it is abused by improper conduct on the part of the parent, courts of law will restrain him in its exercise, and even take the custody permanently from him. Archer's Case, 1 Ld. Raym. 673; Rex v. Smith, 2 Strange, 982; Rex v. Delaval, 3 Burrows, 1434; Com. v. Addicks, 5 Bin. 520. By the common law, also, a father is entitled to the benefit of his children's labor, while they live with him, and are maintained by him; but this (as has been justly observed) is no more than he is entitled to from his servants. 1 Bl. Comm. 453. It has also been asserted, that by the same law a father may bind his children as apprentices without their consent; and thereby convey the permanent custody of their persons, as well as benefit of their labor, to their masters during their minority. Com. Dig. "Justice of the Peace," B, 55. But, notwithstanding the

aid of the very respectable authorities (Day v. Everett, 7 Mass. 145), it may well be doubted, if this doctrine can be supported to the extent in which it is laid down. The custody of minors is given to their parents for their maintenance, protection, and education; and if a parent, overlooking all these objects, should, to answer his own mercenary views, or gratify his own unworthy passions, bind his child as an apprentice upon terms evidently injurious to his interests, or to a trade, or occupation, which would degrade him from the rank and character, to which his condition and circumstances might fairly entitle him, it would be extremely difficult to support the legality of such a contract. Respublica v. Kepple, 2 Dall. [2 U. S.] 197; Rex v. Inhabitants of Cromford, 8 East, 25. And it would be a strong proposition to maintain that a father might, in time of war, upon the mere footing of the common law, enlist his son as a common soldier in the army, or as a seaman in the navy, without his consent, and compel him to serve during the whole period of his minority, without a right to receive to his own use any of the earnings of his laborious and perilous course of life. Grace v. Wilber, 10 Johns. 453. In such a contract, there would not even be a semblance of benefit to the minor.[2] It is not, however, necessary to decide these points; and they are commented on, merely in answer to some suggestions at the bar. Be the right of parents, in relation to the custody and services of their children, whatever they may, they are rights depending upon the mere municipal rules of the state, and may be enlarged, restrained, and limited as the wisdom or policy of the times may dictate, unless the legislative power be controlled by some constitutional prohibition.

The constitution of the United States has delegated to congress the power "to raise and support armies," and "to provide and maintain a navy"; and, independent of the express clause in the constitution, this must include the power "to make all laws, which shall be necessary and proper for carrying into effect the foregoing powers." It is certain, that the services of minors may be extremely useful and important to the country, both in the army and navy. How many of our most brilliant victories have been won, on land and sea, by persons, who had scarcely passed the age of minority? In the navy, in particular, the employment of minors is almost indispensable. Nautical skill cannot be acquired, but by constant discipline and practice for years in the sea service; and unless this be obtained in the ardor and flexibility of youth, it is rarely, at a later period, the distinguishing characteristic of a seaman. It is notorious that the officers of the navy generally enter the service as midshipmen as early as

---

[2] It has been recently decided in New York, that a parent has no authority to bind his child to military service. Grace v. Wilber, 10 Johns. 453, 12 Johns. 68.

the age of puberty; and that they can never receive promotion to a higher rank, until they have learned, by a long continuance in this station, the duties and the labors of naval warfare. And to this early discipline and experience, as much as to their gallantry and enterprise, we may proudly attribute their superiority in the contests on the ocean during the late war. It cannot, therefore, be doubted, that the power to enlist minors into the naval service is included within the powers delegated to congress by the constitution; and the exercise of the power is justified by the soundest principles of national policy. And if this exercise should sometimes trench upon supposed private rights, or private convenience, it is to be enumerated among the sacrifices, which the very order of society exacts from its members in furtherance of the public welfare.

The position asserted at the bar, denying to congress the power of enlisting minors without the consent of their parents, is not a little extraordinary. It assumes as its basis, that a granted power cannot be exercised in derogation of the principles of the common law; a construction of the constitution, which would materially impair its vital powers, and overthrow the best settled rules of interpretation. Can there be a doubt, that the state legislature can, by a new statute, declare a minor to be of full age, and capable of acting for himself at fourteen, instead of twenty-one years of age? Can it not emancipate the child altogether from the control of its parents? It has already, in the case of paupers, taken the custody from the parents, and enabled the overseers of the poor to bind out the children as apprentices, or servants, during their minority, without consulting the wishes of the parents. Act Feb. 26, 1794, § 4. It has, without the consent of parents, obliged minors to be enrolled in the militia, and to perform military duties; and although these duties are, in time of peace, but a slight interference with the supposed rights of parents; yet they may, in time of war, expose minors to the constant perils and labors of regular soldiers, and altogether deprive their parents of any control over their persons or services. In time of war, too, the state may, for its defence, establish and maintain an army and navy; and it would be a strange and startling doctrine, that the whole youth of the state might, unless the consent of their parents could be previously obtained, be withheld from the public service, whatever might be the pressure of the public dangers or necessities. And if the state legislature could, in their discretion, abrogate or limit the paternal authority, it must be for precisely the same reasons, that the national legislature could do it, viz. that it is necessary, or proper, to carry into effect some other granted powers.

It has been justly observed, in a work of the very best authority (The Federalist, No. 44), that no maxim is more clearly established in law or in reason, than that wherever the end is required, the means are authorized. Whenever a general power to do a thing is given, every particular power necessary for doing it is included. And I feel no scruple in affirming, that congress, having authority "to provide and maintain a navy," may constitutionally authorize the enlistment into the naval service of any minors, independent of the private consent of their parents; and that the statutes passed for this purpose are, emphatically, the supreme law of the land. Nor is the exercise of this power novel in the institutions of that country, from which we have borrowed most of the principles, which regulate our civil and political rights. It has even been pushed to an extent, which is not only odious, but has become, in a great degree, subversive of the personal liberty of a large class of meritorious subjects. Minors may not only be enlisted into the British navy without the consent of their parents; but they may be forcibly impressed into it against the joint will of their parents and themselves. And even apprentices, regularly bound by contract, are not, except in special cases, and for a limited time prescribed by statute, exempted from the like impressment. Rex v. Reynolds, 6 Term R. 497; Rex v. Edwards, 7 Term R. 745; Ex parte Softly, 1 East, 466; Ex parte Brocke, 6 East, 238; St. 13 Geo. II. c. 17.

Much has been stated in the argument, in reference to what contracts of infants are void, and what are voidable at the common law. There is in the books considerable confusion on this subject, which has not been entirely removed by the learned discussions in Zouch v. Parsons. 3 Burrows, 1794; and see Burgess v. Merrill, 4 Taunt. 468. The distinctions laid down in another case by Lord Chief Justice Eyre, seem founded in solid reason. viz. that where the court can pronounce, that the contract is for the benefit of the infant, as for instance, for necessaries, there it shall bind him; when it can pronounce it to be to his prejudice, it is void; and that where it is of an uncertain nature, as to benefit or prejudice, it is voidable only; and it is in the election of the infant to affirm it or not. Keane v. Boycott, 2 H. Bl. 511; Rex v. Shinfield, 14 East, 541. It is a material consideration also, that the validity of the infant's act, or contract, is, in point of law, independent of the right of custody in his parent, although this may be an ingredient in ascertaining in point of fact, whether the act, or contract, be for his benefit or not. In short, the disabilities of an infant are intended by law for his own protection, and not for the protection of the rights of third persons; and his acts may, therefore, in many cases, be binding upon him, although the persons, under whose guardianship, natural or positive he then is, do not assent to them. The privilege, too, of avoiding his acts or contracts, where they

are voidable, is a privilege personal to the infant, and which no one can exercise for him. Keane v. Boycott, 2 H. Bl. 511. And whenever any disability, enacted by the common law, is removed by the enactment of a statute, the competency of the infant to do all acts within the purview of such statute, is as complete as that of a person of full age. And whenever a statute has authorized a contract for the public service, which, from its nature or objects, is manifestly intended to be performed by infants, such a contract must, in point of law, be deemed to be for their benefit, and for the public benefit; so that when bona fide made, it is neither void nor voidable, but is strictly obligatory upon them. I say bona fide made, for if there be fraud, circumvention, or undue advantage taken of the infant's age, or situation, by the public agents, the contract could not, in reason or justice, be enforced. It would be strange, indeed, if courts of law could judicially hold contracts to be void, or voidable, which the legislature should deem salutary or essential to the public interests; or pronounce them invalid, because entered into by the very parties, who were within the contemplation of the law.

From these more general considerations, we may now pass to the question, whether the laws of the United States authorized the enlistment of minors into the navy, without the consent of their fathers. All the acts, from the first establishment of the navy, authorize the employment of midshipmen (who are invariably minors, when they enter the service) and all the acts since the statute of 30th June, 1798, c. 81, including those now in force, and under which the present applicant has been enlisted and held in service in express terms authorize the president to engage and employ "boys" in the ordinary duties of the navy. In no one of them is there any provision requiring the consent of parents or guardians to their engagement, or authorizing them to make it. See Acts 30th June, 1798, c. 81 [1 Story's Laws, 520; 1 Stat. 575, c. 64]; 21st April, 1806, c. 35 [2 Stat. 390]; 3d March, 1807, c. 40 [2 Stat. 443]; 31st January, 1809, c. 78 [2 Story's Laws, 1109; 2 Stat. 514, c. 11]; 2d January, 1813, c. 148 [2 Story's Laws, 1282; 2 Stat. 789, c. 6]. The laws manifestly contemplate, that it is a personal contract made by the infants themselves for their own benefit. They are entitled to the pay, the bounties, and the prize-money earned and acquired in the service. This is not denied in the argument. And if the laws be so, then they must, by necessary implication, give a capacity to the infants to make such a contract; and when made, assert its legal validity. Upon any other supposition, the whole object of the legislature would be defeated; for if the contract of the infant, made without the assent of his parent, were void, or voidable, that assent would not, by the mere operation of the common law,

change its character. A contract voidable by the common law, cannot be confirmed or avoided by any assent or dissent of the parent thereto. It is binding, or not, solely at the election of the infant himself. And if the contract be void, it is incapable of being set up by any person. To suppose, that the legislature meant to authorize an infant to enlist in the navy and yet that the contract should be voidable at his election, would be to suppose, that it meant to repeal the rules and articles of the navy in his favor, and enable him to desert, when his services were most important to the public. If, indeed, the acts of congress had authorized parents or guardians to bind their minor children to an apprenticeship or servitude in the navy, a valid contract might then have been made by such parents or guardians. But there is no such authority in the acts, nor am I satisfied, that it ever existed at the common law; and if it ever did, the statute of Massachusetts of the 28th of February, 1795, c. 64, seems to have restrained the exercise of that power to the cases and manner specified in that statute. A different doctrine has indeed been held; but it seems to me extremely difficult to be maintained (Day v. Everett, 7 Mass. 145), and, in a case depending upon similar principles of construction, the opposite doctrine has been established in another court (Ex parte M'Dowle, 8 Johns. 253).

Upon the whole, as congress have authorized "boys" to be engaged in the service of the navy, without requiring the previous consent of their parents to the contract of enlistment, that contract, when fairly made with an infant of reasonable discretion, must be deemed to have a semblance of benefit to him, and to be essential to the public welfare, and, therefore, binding to all intents and purposes. And if it were not so binding, but were voidable, even the consent of parents would not infuse into it any farther validity. This construction of the acts respecting the naval establishment, is confirmed by the general practice in that department, and by the consideration, that in the acts respecting enlistments in the army, a proviso was for a long time inserted, "that no person, under the age of twenty-one years, shall be enlisted by any officer, or held in the service of the United States without the consent of his parent, guardian, or master, first had and obtained, if any he have." See Acts 16th March, 1802, c. 9 [2 Stat. 132]; 11th January, 1812, c. 14 [2 Stat. 671]; 20th January, 1813, c. 154 [2 Story's Laws, 1284; 2 Stat. 791, c. 12]. By the acts of 1812 and 1813, this contract must be in writing. And at length the necessities of the public service were such, that the enlistment of minors, over eighteen years of age, into the regular army, was expressly authorized. And the proviso of the act of the 20th of January, 1813, ch. 154, which required the previous consent of their parents, guardians, or mas-

ters was expressly repealed by the act of 10th of December, 1814, c. 10 [3 Stat. 146]. This course of legislation manifestly shows, that whenever the rights of parents were intended to be saved, a special proviso was uniformly introduced for that purpose.

The decisions of two very respectable state courts, which have been cited at the bar, so far as they go, proceed on the same principles, which have been adoped by this court, and are entitled to great weight. Com. v. Murray, 4 Bin. 487; Ex parte Roberts, 2 Hall, Law J. 192. The decisions of our own state court, which have been cited on the other side, are inapplicable; for they turn altogether upon the meaning and extent of the proviso in the army act of 1813, c. 154. It is not now necessary to consider, how far a state court has jurisdiction to discharge a person, who, by the return of the habeas corpus is shown to be enlisted under a contract with the United States. Whenever that question shall arise, it will deserve very grave consideration. See Ex parte Roberts, 2 Hall. Law J. 192; Ferguson's Case, 9 Johns. 239; Martin v. Hunter, 1 Wheat. [14 U. S.] 304. But, with great deference to the learned judges, I have never been able to bring my mind to assent to the construction put upon the act of 1813, in some of the cases in the Massachusetts Reports. Com. v. Cushing 11 Mass. 67.

The view, which has been taken upon the general question, as to the validity of the contract of enlistment, renders it unnecessary to consider the second point made in this cause, viz. how far an infant can, by disaffirming his contract of service, avoid the punishment, which has been regularly adjudged against him by the sentence of a court-martial, for a crime committed by him, the whole proceedings and sentence having been pronounced, while the contract was in force. See Rex v. Inhabitants of St. Nicholas, Burrows, Sett. Cas. 91; 2 Strange, 1066; Gray v. Cookson, 16 East, 13; Grace v. Wilber, 10 Johns. 453, 12 Johns. 68.

If it had been necessary in this case to ascertain, whether there had been any consent of the father. I should have thought it necessary to have required more explicit affidavits than have been made, and a peremptory denial of assent on the part of the father, as well as a special statement of the facts, as to the mode of life and place of residence of the minor previous to his enlistment; for an assent of the father need not be express, but may be implied from circumstances. If a father should voluntarily send his minor children away from home, to obtain a maintenance and support in any manner, that they could; this would be an implied consent to any contract for that purpose, into which they should enter, and a waiver of his parental rights. It is upon this ground, that the ordinary retainers of servants, who are minors, are held valid against the subsequent acts of the father. In strictness of law the contract of the minor in such cases becomes obligatory, because, being an exile from his father's house, whatever contract he forms is, in an enlarged view, necessary for his support, maintenance, or education.

I am of opinion, that Robert Treadwell, the minor, ought to be remanded to the custody of his commanding officer. It is the opinion of the district judge, that the consent of the parent, or guardian, when there is one, is necessary, either expressed or implied, to authorize the engagement of a minor in the naval service; but he concurs in the order to remand the said Robert to the custody of his commanding officer on the special circumstances of this case.