Glidden
v.
Hunt.

---

## COMMONWEALTH *versus* JOHN DOWNES.

If a minor be enlisted, under an act of Congress, in the army or navy, without the consent of his father or guardian, this Court will discharge him from such enlistment, upon the application of the father or guardian, unless it appear, by the express words of the act or by necessary implication, that Congress intended to dispense with the necessity of such consent.

THE facts in this case are sufficiently set forth in the opinion of the Court, which was delivered by

SHAW C. J.   This was a writ of *habeas corpus* addressed to John Downes, Esquire, an officer of the United States, and commander of the naval station in this vicinity, to bring in the body of John H. Lord, with the cause of his detention. The writ was issued at the instance of Thomas Phillips, of Lynn, who claims to be the lawful guardian of Lord.   The respondent returns, that Lord has shipped as an ordinary seaman in the navy of the United States, and he claims to hold him in that capacity.

Upon this return, and the examination had thereon, it is proved

*Oct. 22d,
1836.*

---

that Lord is still a minor, about twenty years of age; that Phillips was appointed his guardian by the probate court for this county, in October, 1832, and still continues his lawful guardian; that he has never consented to Lord's engaging as a seaman in the navy of the United States, or otherwise leaving his, Phillips's, employment. It further appears, that Phillips was carrying on the trade and business of a shoemaker, and that Lord, with his own consent, was learning that trade as an apprentice to his guardian, who now claims to have him restored to his custody and service. Some attempt was made to show, that the master and guardian had, at different times, told him to go away, to quit, &c., from which it was contended that his consent might be inferred; but the Court are satisfied, upon the whole evidence, that these were words of haste and heat, and were not intended on the one side, nor understood on the other, as a consent on the part of the master to the ward's leaving him, and entering the navy. On the contrary, when the guardian knew, at some former period, that the minor had a desire to go into the navy, he advised him to consult his uncle and friends about it, which he never did; and on the day the minor left his guardian, the latter, on going out of the shop, told the young man to go to work; and he was under that order when he left his master's service, without his consent or knowledge.

We are then to consider it as the case of a minor, an orphan, having a lawful guardian, with whom he is living as an apprentice, leaving the house and service of his master and guardian, without his consent or knowledge, and entering as an ordinary seaman in the United States navy. Is this engagement lawful, and can the United States detain him under it against the claim of the master and guardian to have him restored to his custody?

In discussing this general question, two inquiries naturally arise; first, whether, by the Constitution of the United States, Congress have authority to provide for the enlistment of minors without the consent of their parents, guardians, or masters; and if they have, secondly, whether, by the existing law providing for the employment of seamen for the navy, they have exercised such authority, and empowered their recruiting officers thus to employ boys.

It is not necessary in the present case to question the power of the general government, under the constitution, to provide for the enlistment of boys, either in the navy or the army of the United States, without the consent of their parents or guardians. They are authorized to raise and support armies and navies, they are specially charged with the defence of the country ; and it is impossible to say that the exigencies of the country may not be such, as to require the exercise of this extraordinary power. And it may be conceded, as a sound legal maxim, that wherever the constitution has invested congress with power to provide for a particular end, they are in vested with authority to provide the necessary means. But when the means for carrying into effect any particular constitutional power are not specified, those means which interfere with established relations, and violate existing rights and obligations, as fixed by law, will not be presumed to be intended, unless they are strictly necessary. Without therefore questioning the power of congress to provide by law for the enlistment of boys, without the consent of their parents, the inquiry substantially resolves itself into the second question above stated, namely, whether the existing law does authorize such enlistment.

It is well settled that by the law of this Commonwealth, and probably by that of most of the States deriving their institutions from the common law of England, a father has a legal right to the custody of the person of his minor son, and, as necessarily incident, a right, until the son is in some form emancipated, to control all contracts made for his employment. It is a very different question, what contracts a minor has legally power to make, where he is at liberty to make contracts for himself. This depends upon the legal principle establishing the disability of a minor to make contracts for want of judgment and capacity to determine what is for his own benefit, and upon the extent of the exceptions to that rule of disability. But where there is a father claiming the custody of his child, his right is paramount to that of the son, to make contracts for his own employment, without regard to the consideration, whether such contracts, if performed, would be beneficial to the minor or not. This right, in case of an orphan, is transferred to the guardian, if there be one.

This right of the father or guardian to have the custody of the minor child, and under this general authority, the right to control and regulate his education, his employment, his place of residence and occupation, is a most important and valuable one, a right essential to the maintenance of parental authority, and one on which the advancement of good education and the promotion of social order and good government, do very greatly depend. The mild but firm and steady discipline of a well regulated family, is probably the most effectual training, for making good citizens, fitted for all the exigencies of a free and enlightened government. If, at the sound of the drum and fife, and the display of the flag of the recruiting officer, all the boys of a city or village, of whatever age, could quit the parental roof, and, without the consent, and against the remonstrances of their parents and guardians, could enlist for the navy and march off, and such a proceeding were sanctioned by law in a time of peace, or when no extraordinary exigency exists, it would lead to a state of society very much like anarchy. It is not necessary to decide, that congress has not the power, under their authority to raise navies and armies, and in the discharge of their duty to provide for the defence of the country, to resort to these extraordinary means. But the argument founded upon it is this, that whenever congress, in the execution of this power, shall perceive an exigency so great as to warrant extraordinary and unusual means for recruiting the navy, of which they in their wisdom are to judge, they will do it in terms which shall admit of no doubt, that is, by direct words or necessary implication. And whenever such a power is intended to be exercised, it is reasonable to conclude, not only that it will be done in terms admitting of no doubt or controversy, but that it will be regulated by such reasonable exceptions and limitations and qualified in such a manner as to prevent it from becoming oppressive and injurious. The law relied upon by the respondent, and on which he claims that the minor was duly and lawfully engaged in the naval service of the United States, is the law authorizing the employment of boys.

The law contemplates the employment of boys, and if no other means existed, but that of enlisting them without the

consent of their parents and guardians, it would undoubtedly follow, that congress had intended by such enactment, to authorize such enlistment. But this is far from being the case.

The law undoubtedly goes to the extent of rendering the employment of boys legal, because this is a necessary implication from the law directing their employment. But the mode of their engagement is not directed ; and it is therefore left to other and existing laws, or to known and established usages. It is not therefore necessary to consider the question, whether a contract to serve in the navy, would be such a contract as a minor, notwithstanding his disability, would have power to make, as one for his own benefit, because congress having legalized the employment of boys, in some form, a contract made by a minor, if sanctioned by the consent of those whom the laws of nature and society have appointed to act for him, and by those who are invested by law with the custody of his person and the control and direction of his education and employment, would, of course, be legal. The law certainly does not expressly authorize the enlistment of boys without the consent of their parents or guardians, where there are any ; and from the considerations suggested, we think it does not do this by any necessary or natural implication. The law of the United States is expressed in the most general terms, authorizing the employment of boys ; and this can be done without affecting the established rights of parents, guardians or masters. The Court are, therefore, all of opinion, that the law of the United States, simply authorizing the employment of boys, did not intend to supersede and take away all parental control and authority from parents and guardians ; but it was intended to be carried into effect, in subordination to the established rights and powers of those, who are intrusted by law with the custody of the persons and the regulation of the employment of minors.

To illustrate this view of the case ; let it be taken for granted, that the constitution of the United States has authorized congress, amongst other high powers necessary for the defence of the country, to provide by law for filling the army and navy by conscription and impressment, that is, by a forced and compulsory enlistment. Congress does provide by law, for

raising men, but without directing the means. Would it be reasonable to construe this law as an authority to impress men into the service, against their consent ? We think not, and obviously, because such a construction would not be necessary, inasmuch as men may be engaged by voluntary contract, and therefore it would not be warranted as a necessary implication from the authority to raise men ; and because it would not be presumed, that congress intended to sanction by law the exercise of so extraordinary a power, unless it were done by express words or necessary implication. This is no doubt an extreme case ; but it seems to the Court to be analogous in principle, and to illustrate the grounds of construction upon which they have proceeded in this case.

This case differs materially from that of the *United States* v. *Bainbridge*, 1 Mason, 71. There the suit was instituted solely at the instance of the minor, after a desertion, and it did not appear, that the father had not consented, or that the son had not been previously emancipated. And the question was, whether a minor, permitted in other respects to act *suo jure* and to make contracts for his benefit, could make a valid contract for his own employment in the navy, or whether such a contract was void, on the ground of his disability from infancy.

The result of this view of the statutes of the United States is, that the enlistment of Lord, having been made without the consent of his guardian and master, who dissented from it, and now asserts his right to the custody and service of the minor, the Court are of opinion that this enlistment was invalid and void, and that the minor cannot be detained under it, against the claim of that guardian. He is therefore to be discharged from the custody of the respondent, and restored to that of the guardian.

At the argument (on October 21st, 1836,) *Choate*, for the applicant, to the point, that the circumstance that the application was made by the guardian of the minor materially distinguished this case from preceding cases, cited *United States* v. *Bainbridge*, 1 Mason, 71 ; *Ex parte Roberts*, 2 Hall's Law Journal, 192 ; *Commonwealth* v. *Murray*, 4 Binney, 487 ; to the point, that the contract of enlistment in the present case

might be avoided by the guardian, *Commonwealth* v. *Cushing*, 11 Mass. R. 67 ; *Commonwealth* v. *Harrison*, 11 Mass. R. 63 ; as to the rights and powers of parents and guardians, *Day* v. *Everett*, 7 Mass. R. 145 ; *St.* 1794, *c.* 64 ; *St.* 1793, *c.* 59, § 5 ; *Holyoke* v. *Haskins*, 5 Pick. 26 ; Reeve's Dom. Rel. 317, 320, 323, 326, 328 ; *Potinger* v. *Wightman*, 3 Meriv. 67 ; to the point, that although the relation of guardian and ward may be disregarded by congress, in enacting laws on the subject of enlistment, yet the intention of Congress to disregard such relation, must be shown either by express language or inevitable implication, *U. S. St.* (Story's ed.) 1798, *c.* 81, § 5 ; 1807, *c.* 95 ; 1806, *c.* 35 ; 1809, *c.* 78 ; 1813, *c.* 148 ; 1813, *c.* 154 ; 1814, *c.* 163 ; [see also *U. S. St.* 1837, *c.* 389 ;] and that the Court had jurisdiction over this application, *Ex parte Roberts*, 2 Hall's Law Journal, 192 ; *Matter of Ferguson*, 9 Johns. R. 239 ; *Commonwealth* v. *Harrison*, 11 Mass. R. 63 ; *Matter of Stacy*, 10 Johns. R. 328.

*E. Smith*, for the respondent, to the point, that the contract of enlistment in this case, if invalid, could be avoided only by the minor, cited *Commonwealth* v. *Cushing*, 11 Mass. R. 67 ; *Commonwealth* v. *Hammond*, 10 Pick. 274 ; *United States* v. *Bainbridge*, 1 Mason, 71.