## BRIDGET LANAHAN *vs.* HENRY W. BIRGE.

A minor between the ages of 18 and 21 may be lawfully enlisted as a member of a regiment of volunteers organized under the act of this state of May, 1861, for the service of the United States, without the consent of his parent or guardian.

Every citizen of sufficient age and capacity is under obligation to render military service to the country when required, and is subject to draft for such service; and minors are subject to draft equally with others.

Enlistment is only another and less objectionable mode of securing military service; and any person liable to be drafted may voluntarily enlist.

The right of a parent to the services and control of his child is subordinate to the right of the government to his services.

The provision of the acts of Congress of 1802, 1808, and 1815, that minors should not be enlisted in the army of the United States without the consent of their parents or guardians, has no application to the enlistment of volunteers under the authority of the states for the service of the United States, under the call of the President, of April, 1861.

The enlistment in a volunteer regiment organized under the act of this state of May, 1861, is a contract with the state and not with the United States; and it is a contract made under no authority given or limitation fixed by the laws of the United States.

The provision of that act that the volunteers enlisted "shall be subject to all the rules and articles applicable to the troops in the service of the United States," does not bring the volunteers within the provisions of the laws of the United States with regard to enlistments, but was intended only to provide that when mustered into the service of the United States they should be governed by the same general rules by which the regular army is governed.

And the case is not varied by the fact that the acts of Congress provide that no minor "shall be enlisted *or held* in the service of the United States, unless, &c." This provision is a rule of enlistment merely, and not a rule for the government of the army.

HABEAS CORPUS ; tried in the superior court before *Waldo, J.*

The respondent was colonel of the 13th regiment of Connecticut volunteers, then quartered in the city of New Haven, which was raised and organized under the act of the General Assembly, approved May 8, 1861, and which had been accepted by the United States government and mustered into its service. Michael Lanahan, for whose discharge the proceeding was instituted, was held as a private in the regiment. The applicant was his mother and his only surviving parent, his father having died previous to his enlistment. On the 16th of January, 1862, at which time he was in the nineteenth year of his age, he voluntarily enlisted in the regiment as a private, and on the 20th of January, 1862, was regularly mustered and sworn into the service of the United States as a soldier in the regiment, and was now detained by the respondent solely as such member of the regiment.

The foregoing facts were found by the court upon the application and return, and on these facts the said Michael was remanded to the custody of the respondent as colonel of the regiment. The applicant thereupon moved for a new trial.

*Doolittle,* with whom was *Bronson,* in support of the motion.

The enlistment of a minor in the army, without the consent of his parent or guardian, is prohibited by the act of Congress of the 16th of March, 1802, sec. 11 ; the same provision being re-enacted in the act of the 12th of April, 1808, sec. 5, and in that of the 3d of March, 1815, sec. 7.    2 U. S. Statutes at Large, 134, 483.    3 id., 225.    Brightley's Dig., 1088.    A mother is a parent within the meaning of the act, where, as in this case, there is no father.    *Commonwealth* v. *Callan,* 6 Binn., 255.    It is said however that the act of 1802 was not intended to apply to volunteers in regiments organized under state authority.    But the language of the act is, " No person shall be enlisted *or held* in the service of the United States, unless, &c."    And the act of the General Assembly of this state, passed at the May session, 1861, under which the volunteer regiments of this state were enlisted and organized, provides expressly (sec. 4,) that the volunteers " shall be subject to

all the rules and articles applicable to the troops in the service of the United States." Acts of 1861, p. 4. It was at that time, as we have seen, a rule with regard to the army of the United States, that no minor should be enlisted or held in the service without the consent of his parent or guardian. The act of Congress of the 22d of July, 1861, authorizing the president to employ the volunteer forces organized in the states, provides (sec. 2,) that "the said volunteers shall be subject to the rules and regulations governing the army of the United States," and the supplemental act of the 25th of July, 1861, provides (sec. 2,) that they "shall be subject to the rules and articles of war and shall be upon the same footing in all respects with similar corps of the United States army."

The effect of the act of the General Assembly of May, 1861, which does not expressly authorize or forbid the enlistment of minors without the consent of their parents, is not to be extended by implication so as to make it lawful to take such enlistments without such consent. The parent is entrusted with the custody of his children and directs their education and employment. These important rights and duties are not to be overlooked, and it will not be presumed that the legislature intended to disregard them. *Dedham* v. *Natick*, 16 Mass., 140. *Commonwealth* v. *Downes*, 24 Pick., 227.

The state courts have jurisdiction in the case. Hurd on Habeas Corpus, 201. *Carlton's case*, 7 Cowen, 471. *U. States* v. *Wyngall*, 5 Hill, 16. *State* v. *Dimick*, 12 N. Hamp., 197. *Commonwealth* v. *Fox*, 7 Penn. S. R., 336. *State* v. *Brearly*, 2 South., 555. *Commonwealth* v. *Harrison*, 11 Mass., 63, 67. *Commonwealth* v. *Downes*, 24 Pick., 227. *Sims' case*, 7 Cush., 285.

*L. E. Munson*, contra.

The constitution of the United States gives to Congress the power " to provide for organizing, arming and disciplining the militia," and Congress by the act of 1792 provided " that each and every free, able-bodied, white male citizen of the respective states, resident therein, who is or shall be of the age of eighteen years, and under the age of forty-five, shall be en-

rolled in the militia." And the legislature of this state, under the call of the president of the United States upon the state to furnish its quota of five hundred thousand volunteers, at its session in May, 1861, enacted that " every able-bodied white male citizen, resident within this state, of the age of eighteen years, and under the age of forty-five years, excepting &c., shall be enrolled, in the militia of this state ; " and that " the enrolled militia shall be subject to active duty in case of war, invasion, rebellion, &c." Thus by the acts of Congress, and of the legislature of this state, a class of persons between the ages of eighteen and forty-five are selected to form the military force of the state, and no incapacity from want of age can excuse any one. When a call is made, every member of the militia is liable under compulsory process to respond, and if he may be compelled to respond, he may voluntarily enter upon the service, and do what the state would otherwise compel him to do. Lanahan was of ability to enter into the contract of enlistment. At common law, and by the law of this country, a minor may enter into a contract to serve the state, when that contract is not positively forbidden by the state itself, without consent of his parents. *Commonwealth* v. *Gamble*, 11 Serg. & R., 93. *King* v. *Rotherfield Greys*, 1 Barn. & Cress., 345. There is no law of this state prohibiting the enlistment of minors without such consent. If an apprentice enlist in the army, the courts will not, upon a habeas corpus, at the relation of his master, remand the apprentice to his custody. *Commonwealth* v. *Robinson*, 1 Serg. & R., 353.

But it is claimed that the act of Congress of the 16th of March, 1802, forbids the enlistment of minors without the consent of their parents or guardians, and that act is relied upon as authority to warrant the interference of the court in this case. But that was an act fixing the military peace establishment of the United States, and has no reference to the present volunteer service of the country. The 13th regiment of Connecticut volunteers is no part of the regular army of the United States. It was not raised or organized under the act of 1802, or directly under any act of Congress. Under the

act of July 2, 1861, the president of the United States was authorized to accept volunteers to the number of five hundred thousand, to suppress the insurrection and enforce the laws. The rules and regulations applicable to the raising of this force are very different from those relating to the regular army of the United States. The legislature of this state, in response to the proclamation of the president of April 15, 1861, authorized the governor to cause to be enlisted into the service of the state volunteers between the ages of eighteen and forty-five, not exceeding ten thousand, this force to be in addition to and part of the militia of the state, and when enlisted to be subject to all the rules and articles applicable to the troops in the service of the United States. The governor by a general order called for volunteers between the ages of eighteen and forty-five, in pursuance of this statute ; and Lanahan volunteered under the call, joined the 13th regiment, and has been accepted and sworn into the service of the United States as a part of the volunteer force of this state. Here we have a case entirely different from that of an enlistment in the army proper of the United States. Under the laws of this state the militia are required to be from eighteen to forty-five years of age, with no qualification as to height, while the United States army proper are required to be between eighteen and thirty-five, and to be five feet six inches high. And in relation to the term of service, volunteers under the act of Congress of July, 1861, can serve but three years ; they may enter the service for six months, and must be discharged when the war shall end ; while in the army proper persons enlist in all cases for five years, and there is no contingency by which they can sooner be discharged.

The state courts have no jurisdiction in the matter. The record discloses that Lanahan is sworn into the service of the United States under the laws of the United States, and is under the direction of the president as commander-in-chief of the army of the United States. The court having inquired into the case so far as to ascertain these facts ceases to have further jurisdiction, and should dismiss the case, leaving the petitioner to her redress against the enlisting officer, or to

seek her remedy in the federal courts, which have unquestionable jurisdiction of the case. *United States* v. *Booth*, 21 Howard, 506, 523. *Ferguson's case*, 9 Johns., 239.

BUTLER, J. The principles which must determine this case are important but well settled.

1. It is a fundamental principle of national law, essential to national life, that every citizen, whether of age to make contracts generally or not, is under obligation to serve and defend the constituted authorities of the state and nation, and for that purpose to bear arms, when of sufficient age and capacity to do so, and when such service is lawfully required of him. The power to enforce that obligation, so far as the necessities of the state may require, is an incident of state sovereignty, and the subject of state constitutional and statutory regulation. The constitution of the United States has conferred upon Congress also, the power to provide for organizing and disciplining the militia, and for calling them forth to " execute the laws " of the union, " suppress insurrections," and " repel invasions." Exercising the power so conferred, Congress in 1792 passed a skeleton militia act ; and laws for carrying that act into effect, in detail, and conforming our then militia system to its provisions, were passed by the legislature of this state in the same year. By the act of Congress and the auxiliary laws of this state, the age at which a minor should be deemed capable of bearing arms, and be enrolled in the militia, which in this state had previously been sixteen years, was fixed at eighteen. The minor in this case had reached that age, and it is conceded that he was subject to military duty and military draft.

Enlistment is but another and less objectionable method of securing the military service required by the state and due from the citizen ; and the same essential principles of public policy and necessity, which impose the obligation to serve, and confer the power to enforce that obligation, require that the minor who is subject to military draft, should be at liberty to enlist, when called upon in that form to render the military service which the state requires. It may indeed be for

his interest to do so, rather than be subject to draft, as it certainly is sound policy in the government that he should. But however that may be, the obligation to serve, and the right to require the service, exist and are paramount. What a minor can be compelled to do, he may contract to do, or do voluntarily ; and if he is lawfully subject to military duty, and is lawfully called upon to enlist, his contract of enlistment is as valid and binding as that of an adult.

2. Although it is the policy of the law to give to a parent a right to the service and a control of the person of a minor child until he has attained the age which the law has fixed for his emancipation, yet that right and authority are holden in subordination to those paramount rights and powers of the state which are essential to the maintenance of civil society and civil government. And when the power of drafting or enlisting a minor who is lawfully subject to military duty is exercised, the rights and authority of the parent, and of all standing "*in loco parentis*," so far as they are in conflict, must yield and be suspended. Such is the law of England and of this country, and must of necessity be the law of every well regulated state. *King* v. *Rotherfield Greys*, 1 Barn. & Cress., 345. *United States* v. *Bainbridge*, 1 Mason, 71. *Commonwealth* v. *Downes*, 24 Pick., 227.

These principles are decisive of this case unless there is something in it to make it an exceptional one. It is claimed that it is exceptional, and two points are made by the applicant, which it is our duty to examine.

It is said, first, that certain acts of Congress, authorizing enlistments for the regular army, expressly provide that minors shall not be enlisted or held in service, without the consent of their parents, guardians or masters, if any they have,—that by the act of the General Assembly of this state passed in May, 1861, the volunteers enlisted are made subject to the " rules and articles applicable to the troops in the service of the United States," and that a similar provision is contained in the act of Congress of July, 1861, and that it is a rule in the army that no minor shall be enlisted or held without the consent of his parent, guardian or master.

The acts of Congress first above referred to undoubtedly contained such a provision relative to the enlistment of minors. Appreciating the propriety of not interfering with the subordinate rights of parents, &c., without necessity, Congress inserted that provision. But they were special laws for " the fixing of the military peace establishment of the United States." Few men were required, and no difficulty was apprehended in obtaining them. It would have been grossly unjust to parents and those standing " *in loco parentis*," if the exception had not been made, when no public exigency or necessity rendered it important that minors should be so enlisted. That exception was repealed during the exigency created by the war of 1812, by the act of December 10th, 1814. It was expressly re-enacted in 1850, soon after the Mexican war, and has again been repealed, since this case was decided in the court below, by the act of February 13th, 1862.

But the contract of enlistment by virtue of which this minor is holden was not made with the United States nor under or pursuant to any of those acts of Congress. On the 15th of April, 1861, the president, under a pressing exigency arising from insurrection and rebellion, by his proclamation called on the several states for a militia force to suppress them. The legislature of this state thereupon, on the 8th of May following, passed an act authorizing the governor to enlist and equip ten thousand men, and turn them over into the service of the United States, as a part of the militia of the state, upon the requisition of the president. The active militia of the state at that time were all enlisted; and so far as we could be said to have a militia system, it was framed on the principle of having an active militia, as a distinct organization from the enrolled militia, constituted by voluntary enlistment from those enrolled. It was expressly provided in the act of May 8th, 1861, that the ten thousand men should be a part of that active organization. The governor thereupon issued his call for volunteers from those liable to militia duty, viz., between the ages of eighteen and forty-five, and under that act and call this minor enlisted, and was subsequently turned over and mustered into the service of the United States, as one of an

organized regiment of the militia of the state of Connecticut. His contract of enlistment therefore was not with the United States, nor under any authority given or limitation fixed by the laws of the United States, but under a state law which contained no such limitation, and by force of state sovereignty. Doubtless Congress, under the power to provide for organizing the militia conferred by the constitution, may limit the enlistment of minors into special or active militia corps under state authority, by providing that none such shall be enlisted except with the consent of their parents, guardians or masters, and such limitation will be obligatory and controlling upon the states. But no such provision was contained in the act of 1792, and none such exists or has ever existed. Nor has there ever been any such on our own statute book. It has been the practice in this state immemorially, to enlist minors, without regard to such consent, into the independent companies of artillery, cavalry and light infantry, and they were so enlisted into the only active military organization we had in May, 1861. In the absence therefore of any national or state limitation applicable to the militia, and under the immemorial practice, and the law of May, 1861, the power and duty of the governor to enlist this minor, and turn him over to the service of the United States, without reference to any law of the United States regulating enlistments into the regular army, can not be successfully questioned.

But it is further claimed that however that may be, yet by the act of May 8th, 1861, and the act of Congress of July 22nd, 1861, it was provided that the volunteers when enlisted and turned over into the service of the United States should be subject to the rules and regulations governing the army, and that under those rules this minor could not be holden in the service. This claim is without foundation. Congress in several acts passed at different times for the purpose of raising the necessary regular force in time of peace, did provide that no minors should be enlisted without the consent of their parents and guardians, and those provisions furnished a rule for recruiting officers, which was embodied in the general published regulations for the army to which we have been refer-

red; and when minors were enlisted without such consent, they were, on proper application, and because of those enactments, discharged by the proper officer or the courts. But the rule thus furnished was a rule of enlistment, not of government—a limitation of the authority to enlist conferred by those acts—the exercise by Congress of a power derived from the clause of the constitution authorizing them to " raise " armies, and not the clause conferring the authority to make rules for their government, nor that other clause authorizing them to provide for organizing the militia and for governing such part of them as may be employed in the service of the United States. That rule of enlistment had no force or effect upon the states, or in reference to the organization of the militia, or their government when in the service of the United States. The authority to raise or enlist armies, and to make rules for their government, are distinct powers conferred in distinct clauses of the constitution, and so is the further power of organizing and calling forth the militia, and governing them when so called forth.

The expressions, "rules and articles," as used in our statute of May, 1861,—" rules and regulations governing the army," as used in the act of Congress of July 22nd, 1861, " rules and articles of war " in the act of July 25th, 1861, and " rules and articles of war " in the act of July 29th, 1861, all mean the same thing, viz., the rules and regulations constituting the " *articles of war,*" specially and in a distinct and special statute enacted by Congress in 1806, pursuant to the special clause of the constitution which confers power for that purpose, for the government of the army, when raised and organized under other clauses and statutes; and the simple meaning of them all is, that the volunteers and militia, when in the army, shall be governed by the rules and articles of war prescribed by Congress for, and essential to the government of the army. That clause in the act of May, 1861, was unnecessary and without force, for the control of the militia is exclusively with the general government after they are mustered into its service; and the provisions in the several acts of July, 1861, were unnecessary, for section 97 in the act of 1806, pre-

scribing the articles of war, contains the same provision for all cases. But these rules thus specially enacted, and under special authority, contain no rule respecting the enlistment of minors, or in regard to holding them in service, nor any rule which can by implication authorize officers or courts to go behind the enlistments of the states, and discharge a militia man on the ground that he was a minor and enlisted without parental consent.

The second point made by the applicant is, that when the enlistment of minors is provided for in any law, and no provision is inserted in relation to the consent of parents and others standing *in loco parentis*, the court should so construe the law as to make the authority to enlist subordinate to that of parental right; and we are referred to the case of *Commonwealth* v. *Downes*, 24 Pick., 227, as a case in point.

We approve the principles recognized in that case, and the application of them to the facts. The case was decided right, but the decision would have been different we think if the facts had been like those presented here. In that case the minor was enlisted under a special act of Congress, in time of peace, authorizing the enlistment of boys under eighteen into the navy. The act was silent as to the consent of the parent or guardian, and the court held—1st. That in case of exigency Congress might authorize the enlistment of minors without the consent of their parents, and of the existence of such exigency Congress must be the judge; 2nd. That no such exigency existed at the time of the passage of the act in question, and no such intention appeared expressly or by implication; and 3d., that under such circumstances the law should be construed to authorize enlistments in subordination to the authority of the parent, and only with his consent. That consent not having been given, the enlistment was holden invalid.

But the case before us presents a very different state of facts. The law of this state was induced by a controlling exigency, contemplated the enlistment of those subject to military duty, for a service for which they were liable to a compulsory draft which would certainly override parental

Lanahan *v.* Birge.

authority, and a service for which there would be a draft, if a sufficient force was not obtained by voluntary enlistment. The act was indeed silent as to the consent of the parent, but so have been all the acts authorizing the enlistment of the active militia of the state, or of volunteer companies, and minors have always been enlisted into them without asking or obtaining the consent of their parents.

Construing the act of May, 1861, then, according to its import, and with reference to the exigency which it recognized, the purpose which it contemplated, the character of our militia system and laws to which it had regard, and the immemorial usage under them, we think it manifest that it was the intention of the legislature to authorize the governor to receive every person subject to military duty who was disposed to enlist, and without regard to parental right or authority.

We do not advise a new trial.

In this opinion the other judges concurred; except SANFORD, J., who did not sit.