# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

Argued November 18, 2010      Decided June 21, 2011
     Reissued July 8, 2011

No. 09-5410

SANDRA K. OMAR, ET AL.,
APPELLANTS

v.

JOHN M. MCHUGH, SECRETARY OF THE UNITED STATES
ARMY, ET AL.,
APPELLEES

Appeal from the United States District Court
for the District of Columbia
(No. 1:05-cv-02374)

*Joseph Margulies* argued the cause for appellants. With him on the briefs were *Jonathan Hafetz*, *Aziz Z. Huq*, *Emily Berman*, and *Eric M. Freedman*.

*Douglas N. Letter*, Attorney, U.S. Department of Justice, argued the cause for appellees. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Jonathan H. Levy*, Attorney.

Before: GINSBURG, GRIFFITH, and KAVANAUGH, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* KAVANAUGH, with whom *Circuit Judge* GINSBURG joins.

Opinion concurring in the judgment filed by *Circuit Judge* GRIFFITH.

KAVANAUGH, *Circuit Judge*: Shawqi Omar is a dual citizen of Jordan and the United States. Since 2004, the U.S. military has detained Omar in Iraq based on evidence that Omar participated in al Qaeda's terrorist activities there. The United States apparently intends to transfer Omar to the custody of Iraq's government. But since 2005, Omar has pursued a habeas corpus petition in the U.S. court system seeking to block his transfer. Even though U.S. forces are detaining Omar outside U.S. territory, we have jurisdiction to consider his habeas petition because he is a U.S. citizen. *See Munaf v. Geren*, 553 U.S. 674, 685-88 (2008); *cf. Boumediene v. Bush*, 553 U.S. 723, 766 (2008); *Johnson v. Eisentrager*, 339 U.S. 763, 777 (1950); *Al Maqaleh v. Gates*, 605 F.3d 84, 94 (D.C. Cir. 2010).

Omar argues that he cannot be transferred to the custody of Iraqi officials because, he claims, he is likely to be tortured after his transfer. The U.S. Executive Branch responds that it does not transfer persons to countries where they are likely to be tortured. And the Executive Branch maintains that Omar is not likely to be tortured if transferred to Iraqi custody.

In his initial habeas petition, Omar argued that he had a habeas corpus and due process right not to be transferred if, as he alleged, he was likely to be tortured in the custody of the receiving country. Omar contended that he had a corresponding right to judicial review of conditions in the receiving country before he could be transferred. The

Supreme Court unanimously rejected that argument in 2008, concluding that Omar did not have a habeas corpus or due process right to judicial second-guessing of the Executive's determination that he was not likely to be tortured in Iraqi custody. *See Munaf*, 553 U.S. at 692-703.

In his amended habeas petition, Omar now asserts that the Foreign Affairs Reform and Restructuring Act of 1998 (which has been supplemented by the REAL ID Act of 2005) gives him a right to judicial review of conditions in the receiving country before he may be transferred. Omar's statutory argument is no more persuasive than the constitutional argument already rejected by the Supreme Court. As this Court has previously held, the FARR Act and the REAL ID Act do not give military transferees such as Omar a right to judicial review of their likely treatment in the receiving country. *See Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509, 514-15 (D.C. Cir. 2009).

Omar also has refashioned his previously rejected constitutional argument. He contends that he is entitled under the Constitution's habeas corpus guarantee – either by itself or in conjunction with the Due Process Clause or the FARR Act – to judicial review of conditions in the receiving country. We disagree. As the Supreme Court already ruled when considering Omar's case in *Munaf*, the Constitution's guarantee of habeas corpus does not encompass such a right.

We therefore affirm the District Court's denial of Omar's petition for a writ of habeas corpus. In so doing, we recognize that the policy arguments supporting Omar's position are not insubstantial. Congress remains free to provide military transferees such as Omar with a right to judicial review of conditions in the receiving country before they are transferred. But Congress has not done so.

4

I

Shawqi Omar is a citizen of both Jordan and the United States. In October 2004, the U.S. military captured him in Baghdad, Iraq. The United States suspected that Omar had been working with the leadership of al Qaeda in Iraq by recruiting foreign fighters, coordinating with other terrorist groups, and planning and executing kidnappings. In a separate proceeding, the Government of Iraq convicted Omar of immigration violations, and he was sentenced to 15 years in prison.

The U.S. military has detained Omar since 2004 and is currently holding him at Camp Cropper, Iraq. The United States apparently intends to transfer Omar to Iraqi custody. In 2005, Omar's wife, Sandra Omar, and his son, Ahmed Omar, filed a next-friend petition for a writ of habeas corpus in the U.S. District Court for the District of Columbia. Omar sought, among other things, an injunction preventing his transfer to Iraqi custody.

Omar's case reached the Supreme Court in 2008. *See Munaf v. Geren*, 553 U.S. 674 (2008).[1] Omar argued that he

---

[1] This case has followed a meandering course. In 2006, the District Court issued an injunction preventing the U.S. Government from transferring Omar to Iraq. *Omar v. Harvey*, 416 F. Supp. 2d 19 (D.D.C. 2006). On appeal of that ruling, the initial question presented to this Court was whether the federal courts had jurisdiction given that Omar was in the custody of a multi-national force, not an entirely American force. *Omar v. Harvey*, 479 F.3d 1, 5-6 (D.C. Cir. 2007). The Supreme Court had analyzed a similar issue in *Hirota v. MacArthur*, 338 U.S. 197 (1948), and found no jurisdiction to consider habeas claims raised by detainees in the custody of a multi-national force occupying Japan after World War

was likely to be tortured if transferred to Iraqi authorities, that he had a right under "the substantive component of the Due Process Clause" against "transfers to likely torture," and that the courts had the authority and duty to enforce that right by inquiring into his likely treatment in the receiving country, Iraq. Brief for Habeas Petitioners at 51, *Munaf*, 553 U.S. 674 (Nos. 06-1666, 07-394). The Court unanimously rejected Omar's argument, pointing to the Executive's assertion that "it is the policy of the United States *not* to transfer an individual in circumstances where torture is likely to result" and to the Executive's determination that Omar was unlikely to face torture while in Iraqi custody. *Munaf*, 553 U.S. at 702. The Court stated that "[t]he Judiciary is not suited to second-guess such determinations." *Id.* In so concluding, the Court did not distinguish between due process rights and habeas

---

II. In *Omar*, a panel of this Court set forth a four-factored test to flesh out the *Hirota* jurisdictional issue and, applying that test, found jurisdiction to hear Omar's claims. *See Omar*, 479 F.3d at 6-9. In a later case involving a different American citizen, Munaf, held by a multi-national force in Iraq under different circumstances, a panel of this Court applied the *Omar* test to Munaf's habeas petition. Applying that test, the *Munaf* panel found no jurisdiction over Munaf's petition; in doing so, however, the panel expressed doubts about the logic and continued vitality of the Supreme Court's *Hirota* decision, at least with respect to detention of American citizens. *Munaf v. Geren*, 482 F.3d 582 (D.C. Cir. 2007). On review of the *Omar* and *Munaf* decisions together, the Supreme Court significantly cabined the *Hirota* precedent, essentially adopting Justice Douglas's concurrence from that case, and simplified the jurisdictional question when, as here, an American citizen is detained by U.S. forces operating as part of a multi-national force. *Munaf*, 553 U.S. at 685-88. With *Hirota* no longer an obstacle and because Omar and Munaf are U.S. citizens, the Supreme Court found jurisdiction over Omar's and Munaf's petitions but rejected their constitutional claims on the merits. *Id.* at 689-705.

6

corpus rights. The Court followed longstanding extradition principles and precedents, noting that "[h]abeas corpus has been held not to be a valid means of inquiry into the treatment the relator is anticipated to receive in the requesting state." *Id.* at 700 (quoting M. BASSIOUNI, INTERNATIONAL EXTRADITION: UNITED STATES LAW AND PRACTICE 921 (2007)) (emphasis omitted). The Court held that Omar's petition did not "state grounds upon which habeas relief may be granted." *Munaf*, 553 U.S. at 692. Omar's fear of torture in Iraqi custody did not trump the general principle that, absent congressional direction otherwise, courts may not inquire into the treatment a transferee such as Omar might receive in the custody of another sovereign. *See id.* at 700-03.

In his submission to the Supreme Court, Omar also argued that he had a right under the Foreign Affairs Reform and Restructuring Act of 1998 to judicial review of conditions in the receiving country. *See* 8 U.S.C. § 1231 note. The Court declined to reach Omar's FARR Act claim because he had not advanced it in his initial petition for habeas corpus. The Court, in any event, expressed doubt that Omar would have a claim under the Act. *See Munaf*, 553 U.S. at 703 & n.6.

Omar then filed an amended petition for habeas corpus in the District Court. Omar's amended petition raised a stew of FARR Act, habeas corpus, and due process claims. The District Court granted the Government's motion to dismiss. We review that decision de novo.

II

Omar argues that the Foreign Affairs Reform and Restructuring Act of 1998 grants him a right to judicial review of conditions in the receiving country – here, Iraq –

before he is transferred. But this Court has already held that the FARR Act, as supplemented by the REAL ID Act of 2005, does not give military transferees such as Omar that right. *See Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509, 514-15 (D.C. Cir. 2009). In light of that controlling circuit precedent, Omar's argument is unavailing.

The Foreign Affairs Reform and Restructuring Act of 1998 implements Article 3 of the Convention Against Torture. The Convention Against Torture was signed in 1988 by a representative of the President and ratified in 1990 by the U.S. Senate. *See* United Nations Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment, 108 Stat. 382, 1465 U.N.T.S 85; 136 CONG. REC. S17,491-92 (daily ed. Oct. 27, 1990). Article 3 of the Convention Against Torture provides: "No State Party shall expel, return ('*refouler*') or extradite a person to another State where there are substantial grounds for believing that he would be in danger of being subjected to torture." This multilateral treaty is non-self-executing and thus does not itself create any rights enforceable in U.S. courts. *See Medellin v. Texas*, 552 U.S. 491, 505 n.2 (2008).

The FARR Act provides, in relevant part:

(a) POLICY.—It shall be the policy of the United States not to expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture, regardless of whether the person is physically present in the United States.
. . . .
(d) REVIEW AND CONSTRUCTION.—Notwithstanding any other provision of law . . . no court shall have jurisdiction

to review the regulations adopted to implement this section, and nothing in this section shall be construed as providing any court jurisdiction to consider or review claims raised under the Convention [Against Torture] or this section, or any other determination made with respect to the application of the policy set forth in subsection (a), *except as part of the review of a final order of removal pursuant to section 242 of the Immigration and Nationality Act* (8 U.S.C. 1252).

Pub. L. No. 105-277, § 2242, 112 Stat. 2681-761, 822 (1998) (codified at 8 U.S.C. § 1231 note) (emphasis added).

By its terms, the FARR Act provides a right to judicial review of conditions in the receiving country only in the immigration context, for aliens seeking review of a final order of removal. The FARR Act does not give extradition or military transferees – the other two categories in which transfer issues typically arise – a right to judicial review of conditions in the receiving country. Omar is a military transferee, not an alien seeking review of a final order of removal under the immigration laws. Therefore, the FARR Act does not afford him any right to judicial review of conditions in the receiving country. *See Mironescu v. Costner*, 480 F.3d 664, 674-76 (4th Cir. 2007) (FARR Act allows claims only for immigration detainees facing removal); *see also Munaf v. Geren*, 553 U.S. 674, 703 n.6 (2008) ("claims under the FARR Act may be limited to certain immigration proceedings").

It is true that § 2242(a) of the FARR Act states a broad "policy" that the Executive Branch presumably has a responsibility to follow with respect to all transfers, at least absent any claim of unconstitutionality under Article II of the Constitution. The Act also plainly says, however, that only

9

immigration transferees may obtain judicial review of conditions in the receiving country before they are transferred.

Even if the FARR Act had extended a judicial review right to extradition or military transferees such as Omar, a subsequent statute – the REAL ID Act of 2005 – made clear that those kinds of transferees have no such right. The REAL ID Act states that only immigration transferees have a right to judicial review of conditions in the receiving country, during a court's review of a final order of removal. That Act specifies:

> Notwithstanding any other provision of law (statutory or nonstatutory), including section 2241 of title 28, United States Code, or any other habeas corpus provision, and sections 1361 and 1651 of such title, a petition for review filed with an appropriate court of appeals in accordance with this section [§ 242 of the Immigration and Nationality Act] shall be the sole and exclusive means for judicial review of any cause or claim under the United Nations Convention Against Torture and Other Forms of Cruel, Inhuman, or Degrading Treatment or Punishment . . . .

Pub. L. No. 109-13, § 106, 119 Stat. 231, 310 (2005) (codified at 8 U.S.C. § 1252(a)(4)).

Omar is not subject to a removal order and has not filed – and, as a military transferee, is not eligible to file – a petition for review under § 242 of the Immigration and Nationality Act. The REAL ID Act thus confirms that Omar possesses no statutory right to judicial review of conditions in the receiving

country. *See Kiyemba II*, 561 F.3d at 514-15 (citing REAL ID Act).[2]

### III

According to Omar, the Constitution's guarantees of habeas corpus and due process grant him a right to judicial review of conditions in Iraq before he is transferred. We disagree with Omar's constitutional argument.

The Supreme Court ruled in *Munaf* – litigation in which Omar himself was a party – that the Constitution does not grant extradition or military transferees such as Omar a habeas corpus or due process right to judicial review of conditions in the receiving country before they are transferred. *Munaf v. Geren*, 553 U.S. 674, 700-03 (2008).[3]

---

[2] Omar briefly contends that his claim is under the FARR Act and thus is not a "cause or claim" under the Convention Against Torture that is thereby barred by the REAL ID Act. But it is undisputed that the FARR Act implements the Convention Against Torture. Therefore, as this Court has already held, a claim under this section of the FARR Act is a claim under the Convention Against Torture and is barred by the REAL ID Act. *See Kiyemba II*, 561 F.3d at 514-15.

Consistent with our decision in *Kiyemba II*, several other courts of appeals have similarly concluded that a claim about conditions in the receiving country may be raised only during review of a final order of removal under the Immigration and Nationality Act. *See, e.g.*, *Lovan v. Holder*, 574 F.3d 990, 998 (8th Cir. 2009); *Khouzam v. Attorney Gen. of the U.S.*, 549 F.3d 235, 245 (3d Cir. 2008); *Hamid v. Gonzales*, 417 F.3d 642, 647 (7th Cir. 2005).

[3] *Munaf* addressed Omar's argument that the Constitution's habeas corpus guarantee gave him a right to judicial review of conditions in the receiving country. It is thus quite possible that Omar's current habeas corpus arguments, although refashioned, are

In so ruling, the Court recognized that there are three principal settings in which the issue arises: (i) extradition, (ii) transfer of military detainees, and (iii) removal of immigration detainees.

Those facing extradition traditionally have not been able to maintain habeas claims to block transfer based on conditions in the receiving country. Rather, applying what has been known as the rule of non-inquiry, courts historically have refused to inquire into conditions an extradited individual might face in the receiving country. In *Munaf*, the Supreme Court reaffirmed this precise point, stating "we have recognized that it is for the political branches, not the Judiciary, to assess practices in foreign countries." *Munaf*, 553 U.S. at 700-01; *see also, e.g.*, *Neely v. Henkel*, 180 U.S. 109, 122-23 (1901); *Noriega v. Pastrana*, 564 F.3d 1290, 1294-96 (11th Cir. 2009); *Hoxha v. Levi*, 465 F.3d 554, 563 (3d Cir. 2006); *United States v. Kin-Hong*, 110 F.3d 103, 110-11 & nn.11-12 (1st Cir. 1997); *Ahmad v. Wigen*, 910 F.2d 1063, 1066-67 (2d Cir. 1990); Jacques Semmelman, *Federal Courts, the Constitution, and the Rule of Non-Inquiry in International Extradition Proceedings*, 76 CORNELL L. REV. 1198 (1991).

Similarly, military transferees traditionally have not been able to raise habeas claims to prevent transfer based on conditions in the receiving country. Since the Founding, the United States has routinely transferred wartime detainees at the end of hostilities or as part of an exchange, without judicial review of conditions the transferees would face in the other nation. In *Boumediene v. Bush*, the Supreme Court

---

barred as res judicata. We need not decide that question because res judicata is not jurisdictional and Omar's habeas arguments are unavailing in any event.

explained that negotiated exchange of prisoners was "a wartime practice well known to the Framers," and "[j]udicial intervention might have complicated" those negotiations. 553 U.S. 723, 747-48 (2008); *see also Kiyemba v. Obama* ("*Kiyemba II*"), 561 F.3d 509, 519-20 & n.6 (D.C. Cir. 2009) (Kavanaugh, J., concurring) (collecting sources).

Therefore, Omar is in a class of would-be transferees who historically have not been able to bring habeas claims to obtain judicial review of conditions in the receiving country before being transferred. Omar is a military detainee captured during war and now facing transfer to the custody of another nation. In addition, because Omar is facing transfer to the custody of another sovereign that has convicted him of a crime, his situation is analogous to that of an extradition transferee – a point Omar himself acknowledges. *See* Omar Br. at 39; *see also Munaf*, 553 U.S. at 700-02 (relying on extradition cases to analyze Omar's previous claim). But neither military detainees nor those facing extradition historically have possessed a right to judicial review of conditions in the receiving country before they were transferred.

That history matters: In habeas cases, we seek guidance from history "addressing the specific question before us." *Boumediene*, 553 U.S. at 746. Here, the history is clear on the specific question before us. Historically, a would-be transferee such as Omar has possessed no right to judicial review of conditions the transferee might face in another country. As the Court said in *Munaf*: "Habeas corpus has been held not to be a valid means of inquiry into the treatment the relator is anticipated to receive in the requesting state." *Munaf*, 553 U.S. at 700 (quoting M. BASSIOUNI, INTERNATIONAL EXTRADITION: UNITED STATES LAW AND PRACTICE 921 (2007)) (emphasis omitted). Instead, as *Munaf*

explained, history demonstrates that "it is for the political branches, not the Judiciary, to assess practices in foreign countries and to determine national policy in light of those assessments." *Munaf*, 553 U.S. at 700-01 (citing *Neely v. Henkel*, 180 U.S. 109 (1901), and *Wilson v. Girard*, 354 U.S. 524 (1957)).

In light of that history, the Supreme Court unanimously ruled in *Munaf* that transferees such as Omar (indeed, Omar himself) do not possess a habeas or due process right to judicial review of conditions in the receiving country.[4]

Here, Omar tries to dodge *Munaf* by suggesting that the Constitution's habeas corpus guarantee alone gives him a right to judicial review of conditions in the receiving country. That makes no sense. As Omar himself stated in his brief in *Munaf*: "The Due Process and Suspension Clauses converge in habeas." Brief for Habeas Petitioners at 28, *Munaf*, 553 U.S. 674 (Nos. 06-1666, 07-394). *Munaf* held that habeas and due process *together* do not give transferees such as Omar a right to judicial review of conditions in the receiving country. It would be absurd, therefore, to think that habeas *alone* gives Omar such a right.[5]

---

[4] Since *Munaf*, this Court has several times applied that decision, and the Supreme Court has subsequently denied review in each of those cases. *See Kiyemba II*, 561 F.3d 509, *cert. denied*, 130 S. Ct. 1880 (2010); *Khadr v. Obama*, No. 08-5233 (D.C. Cir. Sept. 3, 2010), *cert. denied*, No. 10-751 (U.S. May 23, 2011); *Mohammed v. Obama*, No. 10-5218 (D.C. Cir. July 8, 2010), *stay denied*, No. 10-746 (U.S. July 16, 2010), *dismissed as moot* (U.S. Apr. 12, 2011).

[5] *Munaf* considered a due process claim raised in a habeas petition, and it analyzed the habeas and due process protections without distinguishing the two. The Court in *Munaf* did not need to distinguish between the two constitutional provisions because the

In a related effort to avoid *Munaf*, Omar contends that he advanced only a procedural due process argument in that case, as opposed to the substantive due process argument he asserts now. But his brief in *Munaf* stated that "Omar and Munaf have rights under both the substantive component of the Due Process Clause and the FARR Act against transfers to likely torture." Brief for Habeas Petitioners at 51, *Munaf*, 553 U.S. 674 (Nos. 06-1666, 07-394). When the Court addressed the merits of Omar's claim, it rejected his substantive and procedural due process claims. *See Munaf*, 553 U.S. at 692-703. In light of the Supreme Court's decision, we reject Omar's substantive due process claim here.

In short, the inquiry that Omar asks this Court to undertake in this habeas case – reviewing the conditions Omar might face in Iraqi custody – is the precise inquiry that the Supreme Court in *Munaf* already rejected. As a lower

protections of due process and habeas corpus are inextricably intertwined and overlapping in the context of a petition for habeas corpus filed by a military transferee such as Omar. *See generally Hamdi v. Rumsfeld*, 542 U.S. 507, 525-29 (2004) (plurality opinion); *id* at 538 ("a court that receives a petition for a writ of habeas corpus from an alleged enemy combatant must itself ensure that the minimum requirements of due process are achieved"); *id.* at 555-58 (Scalia, J., dissenting) ("The two ideas central to Blackstone's understanding – due process as the right secured, and habeas corpus as the instrument by which due process could be insisted upon by a citizen illegally imprisoned – found expression in the Constitution's Due Process and Suspension Clauses."); *Fay v. Noia*, 372 U.S. 391, 402 (1963) ("Vindication of due process is precisely [the] historic office" of habeas corpus); Joshua Alexander Geltzer, *Of Suspension, Due Process, and Guantanamo: The Reach of the Fifth Amendment after* Boumediene *and the Relationship Between Habeas Corpus and Due Process*, U. PA. J. CONST. L. (forthcoming).

15

court, even apart from possible res judicata problems with Omar's habeas corpus submission, we have no authority to toss *Munaf* aside in this manner. "Vertical stare decisis – both in letter and in spirit – is a critical aspect of our hierarchical Judiciary headed by 'one supreme Court.'" *Winslow v. FERC*, 587 F.3d 1133, 1135 (D.C. Cir. 2009) (quoting U.S. CONST. art. III, § 1).[6]

IV

The Supreme Court has established that there is no freestanding constitutional right for extradition or military transferees to obtain judicial review of conditions in the receiving country before being transferred. And this Court has established that there is no statutory right for extradition or military transferees to obtain such review. No doubt recognizing those obstacles to his submission, Omar strings together a series of quasi-constitutional arguments: He suggests that the Constitution's habeas corpus guarantee somehow combines with the FARR Act to give him a right to judicial review of conditions in the receiving country, even though neither the Constitution nor the FARR Act by itself does so. We disagree with those arguments; indeed, we have some trouble understanding them.

*First*, Omar at times appears to suggest that Congress cannot give immigration transferees a right to judicial review of conditions in the receiving country unless Congress also extends the right to extradition and military transferees.

---

[6] In *Munaf*, the Supreme Court noted that it was not deciding "a more extreme case in which the Executive has determined that a detainee is likely to be tortured but decides to transfer him anyway." 553 U.S. at 702. We too have no need to decide such a question given the Government's stated policy with respect to Omar.

Whatever the merits of that all-or-nothing position as a policy matter, it strikes us as frivolous as a constitutional matter. We see no constitutional reason Congress cannot incrementally or selectively create new rights for transferees beyond the rights guaranteed by the Constitution, at least so long as no suspect classification is employed and the scheme has a rational basis that satisfies equal protection principles.

*Second*, Omar seems to say that the FARR Act violates the Constitution by declaring a statutory "policy" against transfer to torture for all transferees but then affording only immigration transferees the right to judicial review of conditions in the receiving country. We again fail to see how that poses a serious *constitutional* issue. As a practical and a legal matter, that scenario is no different from Congress creating a right only for immigration transferees to obtain judicial review of conditions in the receiving country. To reiterate, Congress need not proceed in an all-or-nothing manner when expanding judicial review for transferees.

Subject to the constraints of Article II, Congress remains free of course to impose broader responsibilities on the Executive, beyond those required by the Constitution, while declining to provide judicial review of the Executive's compliance with those additional statutory responsibilities. *See, e.g.*, *Norton v. S. Utah Wilderness Alliance*, 542 U.S. 55, 66-67 (2004) (statute does not provide for judicial review of agency's "compliance with the broad statutory mandate"); *Webster v. Doe*, 486 U.S. 592, 599-601 (1988) (statute precludes judicial review of statutory claim against CIA); *Noriega v. Pastrana*, 564 F.3d 1290, 1294-96 (11th Cir. 2009) (statute bars judicial review of habeas claim that State Department did not comply with Geneva Convention); *see*

*generally* 5 U.S.C. § 701(a)(1) (no judicial review when statute precludes judicial review of statutory claims).[7]

That is precisely what Congress did in § 2242(a) of the FARR Act and the REAL ID Act. Because Omar has no constitutional right at stake here (as *Munaf* made clear), Congress has no obligation to provide judicial review for the extra-constitutional responsibilities the FARR Act imposes on the Executive Branch. Omar suggests that Congress cannot express a policy for the Executive Branch to follow without also creating a right to judicial enforcement of that policy. No case has ever said that. Under Omar's approach, Congress may not express a general policy regarding transfers and make that policy judicially enforceable only for immigration transferees. Yet Congress could constitutionally achieve the same result simply by declaring that the transfer policy itself applies only to immigration transferees. The Constitution does not turn on such arcane and empty semantics.[8]

---

[7] Congress's use of the word "policy" in § 2242(a) of the FARR Act – rather than a word such as "right" – reinforces the conclusion that Congress did not intend to create an "entitlement" for all transferees that in turn might trigger *constitutional* habeas or procedural due process protections. *Cf. Town of Castle Rock v. Gonzales*, 545 U.S. 748 (2005); *Sandin v. Conner*, 515 U.S. 472 (1995).

[8] Omar also appears to suggest that there is a constitutional difference between Congress's (i) refusing to grant a statutory right to judicial review of conditions that extradition and military transferees may face in the receiving country and (ii) refusing to grant "jurisdiction" for courts to review conditions that extradition and military transferees may face in the receiving country. We fail to grasp the significance of such a distinction for purposes of the constitutional guarantee of habeas corpus. As a practical matter, the two situations are exactly the same for the transferees. And as a legal matter, the only impact of Congress's proceeding via the "jurisdiction" label is to make clear that FARR Act claims are not

18

*Third*, Omar advances a kind of one-way ratchet theory. He suggests that Congress, through the REAL ID Act, could not take away any statutory right it created in the FARR Act of 1998. As an initial matter, as we explained in our statutory analysis above, the REAL ID Act merely confirmed what the FARR Act said – that only immigration transferees may obtain judicial review of conditions in the receiving country. But even if the REAL ID Act took away a statutory right that the FARR Act had previously granted, that scenario poses no constitutional problem. Congress does not amend the Constitution, or alter the scope of the *constitutional* writ of habeas corpus, whenever it amends a *statutory* right that might be available in a habeas case. Congress thus remains generally free to undo a statute that applies in habeas cases, just as it can undo other statutory rights that it has created. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) ("[J]udgments about the proper scope of the writ are 'normally for Congress to make.'") (quoting *Lonchar v. Thomas*, 517 U.S. 314, 323 (1996)); *Morales v. Bezy*, 499 F.3d 668, 670 (7th Cir. 2007) (quoting *LaGuerre v. Reno*, 164 F.3d 1035, 1038 (7th Cir. 1998)) ("curtailing an optional statutory enlargement does not violate the suspension clause").[9]

_____

available to transferees such as Omar even if the Executive Branch has forfeited or waived an argument against the claims.

[9] One can imagine a statutory habeas right that has existed for so long that the right has come to be considered part of the constitutionally guaranteed writ. *See Boumediene*, 553 U.S. at 746; *INS v. St. Cyr*, 533 U.S. 289, 300-01 (2001); *cf. Washington v. Glucksberg*, 521 U.S. 702, 710-23 (1997) (evolution of rights protected by substantive due process doctrine). But the FARR Act was only seven years old when the REAL ID Act was passed. It would be odd to think that Congress could entrench a statute against repeal – effectively amending the Constitution without observing the requirements of Article V – simply by passing a law

The Seventh Circuit characterized a one-way ratchet theory of the kind advanced by Omar as "irrational." *Morales*, 499 F.3d at 670. In his separate opinion in *St. Cyr* (on a point the *St. Cyr* majority did not address), Justice Scalia labeled the one-way ratchet argument "too absurd to be contemplated." *INS v. St. Cyr*, 533 U.S. 289, 342 (2001) (Scalia, J., dissenting and "contemplat[ing] it no further"). Other noted scholars and jurists have agreed. *See, e.g.*, David L. Shapiro, *Habeas Corpus, Suspension, and Detention: Another View*, 82 NOTRE DAME L. REV. 59, 74 (2006) ("Surely, the guarantee [of the writ of habeas corpus] is not a one-way ratchet, in which every advance in the availability of the writ becomes part of the guarantee itself."); *cf. Swain v. Pressley*, 430 U.S. 372, 384-85 (1977) (Burger, C.J., concurring) (no constitutional problem when Congress partially retracts statutory enlargement of habeas rights); Henry J. Friendly, *Is Innocence Irrelevant? Collateral Attack on Criminal Judgments*, 38 U. CHI. L. REV. 142, 171 (1970) ("What Congress has given, Congress can partially take away."). We likewise reject Omar's argument that the REAL ID Act, to the extent it amended the FARR Act, violated the Constitution's guarantee of habeas corpus.[10]

---

and allowing it to sit on the books for seven years. *See Morales*, 499 F.3d at 670.

[10] In advancing his quasi-constitutional claims, Omar also cites *INS v. St. Cyr*, 533 U.S. 289 (2001). For two independent reasons, we think he over-reads that case. *First*, *St. Cyr* did not concern extradition or military transfers, but rather addressed removal of aliens under the immigration laws. Omar is not an alien facing removal, and Omar himself acknowledges that his case is not akin to that of an alien threatened with removal. *See* Omar Br. at 34-39. *Second*, in *St. Cyr*, the Supreme Court identified a potential violation of the Constitution's habeas corpus guarantee only after examining the historical foundation of the claim St. Cyr asserted.

None of this means that the Executive Branch may detain or transfer Americans or individuals in U.S. territory at will, without any judicial review of the positive legal authority for the detention or transfer. In light of the Constitution's guarantee of habeas corpus, Congress cannot deny an American citizen or detainee in U.S. territory the ability to contest the positive legal authority (and in some situations, also the factual basis) for his detention or transfer unless Congress suspends the writ because of rebellion or invasion. *See Boumediene v. Bush*, 553 U.S. 723, 785-86 (2008). In the earlier iteration of this litigation, Omar raised the habeas argument that the Government lacks constitutional or statutory authority to transfer him to Iraqi authorities. The Supreme Court addressed Omar's argument and determined that the Executive Branch had the affirmative authority to

---

The history showed that St. Cyr's claim – that he was eligible for discretionary relief from removal – "could have been answered in 1789 by a common-law judge with power to issue the writ of habeas corpus." 533 U.S. at 304-05. The Court in *St. Cyr* thus did not hold what Omar in effect argues: namely, that the Constitution's habeas guarantee both (i) is unmoored from the historical scope of the writ and (ii) requires that Congress provide for judicial review of the Executive Branch's compliance with every statutory responsibility Congress imposes on the Executive Branch. The Court in *St. Cyr* protected and enforced what it determined to be the historical scope of the writ. *See id.* at 300-05; *cf. id.* at 341-45 (Scalia, J., dissenting) (interpreting the Court's opinion as enforcing a right that the Court determined to be within the historical scope of the writ). The Court simply left open the possibility that the habeas corpus right might be somewhat broader than it was in 1789. *Cf. supra* note 8. Here, the Supreme Court has already examined the relevant history and held that the right Omar asserts – a right to judicial review of conditions in the receiving country before he is transferred – is not encompassed by the Constitution's guarantee of habeas corpus. *See Munaf v. Geren*, 553 U.S. 674, 700-03 (2008).

transfer Omar. *See Munaf v. Geren*, 553 U.S. 674, 704 (2008). (For wartime military transfers, Article II and the relevant Authorization to Use Military Force generally give the Executive legal authority to transfer.) Here, we are addressing Omar's separate argument, not about the positive legal authority or factual basis for his transfer, but rather about conditions in the receiving country. The Supreme Court addressed that argument as well in *Munaf*, and it concluded that a right to judicial review of conditions in the receiving country has not traditionally been part of the habeas or due process inquiry with respect to transfers. *See id.* at 700-03. Therefore, Congress need not give transferees such as Omar a right to judicial review of conditions in the receiving country.

In sum, Congress has no constitutional obligation to grant extradition and military transferees such as Omar a right to judicial review of conditions in the receiving country. The fact that Congress, in the FARR Act, created such a right for immigration transferees does not raise a constitutional problem simply because Congress did not also extend the right to extradition and military transferees.[11]

---

[11] Omar also invokes the constitutional avoidance doctrine. But the FARR Act and REAL ID Act are clear and, in light of *Munaf*, Omar lacks a credible constitutional argument. "A clear statute and a weak constitutional claim are not a recipe for successful invocation of the constitutional avoidance canon." *Cubaexport v. Dep't of Treasury*, No. 09-5196, slip op. at 14 (D.C. Cir. Mar. 29, 2011) (citing *Clark v. Martinez*, 543 U.S. 371, 381 (2005)); *see also St. Cyr*, 533 U.S. at 299-300 (requiring "serious constitutional problems" and a plausible "alternative interpretation of the statute" to apply constitutional avoidance canon).

22

\* \* \*

In *Munaf,* the Supreme Court held that habeas corpus and due process do not give a transferee such as Omar a right to judicial review of conditions in the receiving country. Congress is free to establish additional statutory protections with respect to transfers, whether to correspond U.S. laws to evolving international law norms or for other policy reasons. Indeed, Congress has done so in the immigration context by allowing aliens in removal proceedings to obtain judicial review of conditions in the receiving country before being transferred.  But Congress has not created such a right for extradition or military transferees such as Omar.  Congress is not constitutionally barred from proceeding in that incremental manner when affording new statutory rights to transferees.

We affirm the judgment of the District Court.

*So ordered.*

GRIFFITH, *Circuit Judge*, concurring in the judgment: The majority concludes that the FARR Act does not afford Omar "a right to judicial review of conditions in the receiving country." Majority Op. 6. I agree that the statute grants Omar, who is being held in Iraq by the U.S. military, no right against being transferred to Iraqi authorities, but I disagree with the majority's suggestion that we have no jurisdiction to consider his claim. Our quarrel over jurisdiction stems from my belief that the FARR Act "trigger[s] constitutional habeas" by giving Omar a colorable claim that his transfer to Iraqi authorities would be unlawful. Majority Op. 17 n.7 (emphasis omitted). When an American citizen is in U.S. custody, the Constitution's guarantee of habeas corpus entitles him to assert any claim that his detention or transfer is unlawful. Because Congress may not deprive Omar of access to the courts without suspending the writ or repealing the statutory basis for his claim, neither of which it has done here, we must consider his argument on the merits.

Section 2242(a) of the FARR Act states that it is U.S. policy not to "expel, extradite, or otherwise effect the involuntary return of any person to a country in which there are substantial grounds for believing the person would be in danger of being subjected to torture." Pub. L. No. 105-277, § 2242(a), 112 Stat. 2681-1, 2681-822 (1998) (codified at 8 U.S.C. § 1231 note). That gives Omar a colorable claim that it would be unlawful to transfer him to the Iraqi government, which might subject him to torture.[1] The federal habeas

---

[1] I agree with the majority that Congress can "express a policy for the Executive Branch to follow without also creating a right to judicial enforcement of that policy." Majority Op. 17. But Omar's claim is that Congress did more than that in the FARR Act—that it gave him a judicially enforceable right against transfer to torture. Even though Omar's reading of the FARR Act is wrong on the merits, the Constitution's habeas corpus guarantee gives us jurisdiction to consider his claim.

statute, 28 U.S.C. § 2241, gives us jurisdiction to hear such a claim from an American citizen, *Munaf v. Geren*, 553 U.S. 674, 688 (2008), and the Supreme Court has repeatedly held that only the clearest of statements from Congress should be read as repealing our habeas jurisdiction, *see Demore v. Kim*, 538 U.S. 510, 517 (2003) (observing that "where a provision precluding review is claimed to bar habeas review," the Court's cases require "a particularly clear statement that such is Congress's intent"); *INS v. St. Cyr*, 533 U.S. 289, 299 (2001) ("Implications from statutory text or legislative history are not sufficient to repeal habeas jurisdiction; instead, Congress must articulate [a] specific and unambiguous statutory directive[] to effect a repeal.").

Section 2242(d) of the FARR Act, which the majority suggests strips the federal courts of jurisdiction to hear Omar's claim, does not speak with the required clarity. Although it leaves no doubt that the FARR Act does not itself "provid[e] any court jurisdiction" to hear claims outside the immigration context, it just as plainly leaves undisturbed our jurisdiction to hear FARR Act claims under 28 U.S.C. § 2241. A plurality of the circuits have reached the same conclusion. *See Cadet v. Bulger*, 377 F.3d 1173, 1182-83 (11th Cir. 2004); *Ogbudimpka v. Ashcroft*, 342 F.3d 207, 215-18 (3d Cir. 2003); *Saint Fort v. Ashcroft*, 329 F.3d 191, 200-02 (1st Cir. 2003); *Wang v. Ashcroft*, 320 F.3d 130, 142 (2d Cir. 2003); *Cornejo-Barreto v. Seifert* (*Cornejo-Barreto I*), 218 F.3d 1004, 1016 n.13 (9th Cir. 2000). *But see Mironescu v. Costner*, 480 F.3d 664, 676 (4th Cir. 2007); *Cornejo-Barreto v. Seifert* (*Cornejo-Barreto II*), 379 F.3d 1075, 1086 (9th Cir. 2004), *vacated as moot*, 389 F.3d 1307 (9th Cir. 2004) (en banc). The different and much clearer language Congress used in the same subsection to strip our jurisdiction to review FARR Act regulations confirms this reading. Congress has told us in unmistakable terms that, "[n]otwithstanding any

other provision of law," no court "ha[s] jurisdiction to review the regulations adopted to implement [the FARR Act]," and that "nothing in [the FARR Act] shall be construed as providing any court jurisdiction" to hear a claim like Omar's. Pub. L. No. 105-277, § 2242(d), 112 Stat. at 2681-822. "Nothing . . . but a different intent explains the different treatment." *Lindh v. Murphy*, 521 U.S. 320, 329 (1997).

While section 2242(d) does not purport to deprive us of jurisdiction to consider Omar's claim against transfer-to-torture, section 106 of the REAL ID Act does. *See* Pub. L. No. 109-13, § 106, 119 Stat. 231, 310 (2005) (codified at 8 U.S.C. § 1252(a)(4)). In that provision Congress declared that we do not have power to consider FARR Act claims outside of the immigration context, "[n]otwithstanding any other provision of law . . . including section 2241 of title 28 . . . or any other habeas corpus provision." *Id.* This is precisely the sort of "clear, unambiguous, and express statement of congressional intent to preclude judicial consideration" that the Supreme Court's cases require for Congress to strip statutory habeas jurisdiction. *St. Cyr*, 533 U.S at 314; *see also Kiyemba v. Obama* (*Kiyemba II*), 561 F.3d 509, 514-15 (D.C. Cir. 2009) (holding that the REAL ID Act strips our jurisdiction to consider FARR Act claims, but not passing on whether this would create a Suspension Clause problem if the issue were pressed). And thus Omar's argument presents a novel issue: whether Congress can strip the courts of habeas jurisdiction to consider a statutory claim that a transfer is unlawful without suspending the writ. As I read the cases and the history, the assumption that undergirds the Suspension Clause is that a prisoner is entitled to raise *any* claim that his detention or transfer is unlawful, and Congress cannot deny

4

him access to the courts to assert such a claim unless it repeals the basis for the claim or suspends the writ.[2]

The majority has a more limited view of the Suspension Clause. Without offering a theory that explains which claims the clause protects, the majority argues that we cannot consider Omar's FARR Act claim because it does not fall into any of three categories that apparently make up the majority's view of the habeas universe. This would be a different case, we are told, if Omar were raising a constitutional claim, Majority Op. 17, a claim that existed in 1789, *id.* at 19 n.10, or a claim that there is no "positive legal authority" for his transfer, *id.* at 20. To be sure, constitutional habeas includes these types of claims. But the Supreme Court has told us that constitutional habeas is at least as robust as common law habeas was when Congress passed the Judiciary Act of 1789, *St. Cyr*, 533 U.S. at 301, and the majority's view of our habeas jurisdiction is more restricted than habeas courts' traditional authority "to examine the legality of the commitment," *Ex parte Watkins*, 28 U.S. (3 Pet.) 193, 202 (1830); *see also Boumediene v. Bush*, 553 U.S. 723, 739 (2008) ("The Framers viewed freedom from unlawful restraint as a fundamental precept of liberty, and they understood the writ of habeas corpus as a vital instrument to secure that freedom.").

The majority first argues that we lack jurisdiction to reach the merits of Omar's claim because he "has no constitutional right at stake here." Majority Op. 17. But this view of the habeas jurisdiction protected by the Suspension

---

[2] Of course, we have no jurisdiction to consider a habeas petitioner's "wholly insubstantial and frivolous" claim, *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 89 (1998) (quoting *Bell v. Hood*, 327 U.S. 678, 685 (1946)), but the majority does not suggest that Omar's FARR Act claim falls in that category.

5

Clause is too cramped. In *St. Cyr*, the Supreme Court, canvassing the history of habeas, found "no suggestion that habeas relief in cases involving Executive detention was only available for constitutional error," 533 U.S. at 302-03, and concluded instead that the Great Writ "has always been available to review the legality of Executive detention," regardless of whether a prisoner's claim is based on "the Constitution or laws or treaties of the United States," *id.* at 305 (internal quotation marks omitted).

At common law, the writ of habeas corpus extended to all detention "*contra legem terrae*," *i.e.*, against the law of the land, 1 EDWARD COKE, THE SECOND PART OF THE INSTITUTES OF THE LAWS OF ENGLAND 54 (Williams S. Hein Co. 1986) (1642), and was "efficacious . . . in all manner of illegal confinement," 3 WILLIAM BLACKSTONE, COMMENTARIES *131. Nothing in the historical record suggests that at the time of the Founding a prisoner could not raise "extra-constitutional" statutory claims when challenging his detention in habeas. Eighteenth-century English habeas courts would order the release of prisoners whose detention violated a statute. *See, e.g.*, *King v. Nathan*, (1724) 93 Eng. Rep. 914 (K.B.); 2 Strange 880 (considering bankrupt debtor's statutory argument); *Hollingshead's Case*, (1702) 91 Eng. Rep. 307 (K.B.); 1 Salkeld 351 (same); *Mellichip's Case*, *Morning Chronicle*, June 18, 1777 (Mansfield, J.), *quoted in* 1 JAMES OLDHAM, THE MANSFIELD MANUSCRIPTS AND THE GROWTH OF ENGLISH LAW IN THE EIGHTEENTH CENTURY 78 (1992) (allowing seaman to raise statutory and common law claims that he was not subject to impressment). State habeas courts at the time of the Founding also entertained statutory claims. *See, e.g.*, *Kennedy & Co. v. Fairman*, 2 N.C. (1 Hayw.) 408 (N.C. Super. Ct. L. & Eq. 1796) (debtor); *Respublica v. Keppele*, 2 U.S. 197, 198-99 (Pa. 1793) (indentured servant); *Respublica v. Betsey*, 1 U.S. 469 (Pa. 1789) (slave); *see also*

*Commonwealth v. Downes*, 41 Mass. (24 Pick.) 227 (1836) (Shaw, C.J.) (military enlistee); *In re Stacy*, 10 Johns. 328, 333-34 (N.Y. Sup. Ct. 1813) (Kent, C.J.) (ordering release of civilian in military custody accused of treason). If the Suspension Clause "protects the writ as it existed in 1789," *St. Cyr*, 533 U.S. at 301 (internal quotation marks omitted), then it surely allows a prisoner to argue that his transfer violates an act of Congress.

Elsewhere in the opinion, the majority suggests that the Suspension Clause applies only to those statutory claims that were available in 1789. Majority Op. 19 n.10. But *St. Cyr* itself involved an alien whose habeas petition sought to block his removal on the basis of a claim under the Immigration and Nationality Act of 1952, which roughly paralleled a claim that Congress first created in the Immigration Act of 1917. *St. Cyr*, 533 U.S. at 294. Notwithstanding the twentieth-century vintage of the asserted statutory right, the Court found that the claim "could have been answered in 1789 by a common-law judge with power to issue the writ of habeas corpus," because it challenged "the legality of Executive detention." *Id.* at 305. As the *St. Cyr* Court understood, a prisoner in executive detention could make any argument that his detention was unlawful, regardless of whether that claim was based on Magna Carta or the most recent innovation of Parliament.

The majority is correct that, prior to the FARR Act, "[h]abeas corpus [was] held not to be a valid means of inquiry into the treatment the [prisoner] is anticipated to receive in the requesting state." *Munaf*, 553 U.S. at 685 (quoting M. CHERIF BASSIOUNI, INTERNATIONAL EXTRADITION: UNITED STATES LAW AND PRACTICE 921 (5th ed. 2007)). But the majority wrongly suggests that *Munaf v. Geren* limits a prisoner to claims that have "traditionally been part of the habeas or due process inquiry." Majority Op. 21 (citing *Munaf*, 553 U.S. at

700-03). *Munaf* examined the historical pedigree of the right against transfer to torture only because the petitioners in that case argued that their transfers would violate due process, a claim that triggers inquiry into the historic roots of the asserted right. The Court did not have occasion to consider whether the Suspension Clause entitles prisoners to raise claims based on recently enacted statutes. *See Munaf*, 553 U.S. at 703 & n.6 (reserving question of whether Omar could successfully challenge his transfer under the FARR Act).

Finally, the majority suggests that the Suspension Clause entitles a prisoner to claim that there is no "positive legal authority for [his] . . . transfer" but not that his transfer would violate his statutory rights. Majority Op. 20. The majority never explains why the Suspension Clause's protections depend on a distinction between whether Congress has withheld statutory authority from the Executive to transfer a prisoner or granted a statutory right against transfer, and the difference seems to me no more than "empty semantics." *Id.* at 17. For example, Omar's claim can also be styled as an argument that the government lacks "positive legal authority" to transfer him: he says the FARR Act places his transfer into Iraqi custody beyond the Executive's power. In fact, Omar articulated his FARR Act claim in exactly this way before the district court, asserting that if his claim succeeds the government "will no longer have any legal ground" to transfer him. Pet'r's Opp'n to Mot. to Dismiss 18, No. 1:05-cv-02374 (D.D.C. Dec. 12, 2008).

But even if there were a meaningful distinction between withholding statutory authority to transfer and granting a statutory right against transfer, the Supreme Court did not recognize any such distinction in *St. Cyr*. Instead, the Court said that "a serious Suspension Clause issue would be presented" if Congress were to strip all courts of jurisdiction

to consider an alien's claim that he had a statutory right not to be removed. 533 U.S. at 305. Whatever the merit of the majority's approach to the Suspension Clause, it is not the approach the Supreme Court took in *St. Cyr*.

The majority attempts to distinguish and limit the force of *St. Cyr* by observing that the Court there "addressed removal of aliens under the immigration laws." Majority Op. 19 n.10. But *St. Cyr* did not distinguish between removal of aliens and other forms of executive detention. Rather, the Court found support for its approach in a wide range of precedents beyond the immigration context, including military detention. *See St. Cyr*, 533 U.S. at 301-02 (citing habeas cases brought by prisoners of war, impressed seamen, slaves, apprentices, asylum inmates, bankrupt debtors, and criminal defendants, among others). The *St. Cyr* Court reasoned that the Suspension Clause entitles prisoners to raise any statutory claim that a proposed transfer to another country would be unlawful, *see id.* at 305, and the majority offers no support for its contention that this constitutional principle applies only in immigration cases.

I agree with the majority that the Suspension Clause is not a "one-way ratchet." Majority Op. 18. Congress can always repeal statutory rights or create new authority for detention, thereby limiting the range of habeas claims that federal prisoners may bring. But that is not what Congress has done here. It has not repealed section 2242(a), the ground for Omar's claim, but has instead sought to limit his ability to bring his claim in federal court. The majority counters that there is no real difference between expressly repealing a right and accomplishing the same end by stripping habeas jurisdiction. Majority Op. 17 n.8. I disagree. A core premise of the Suspension Clause is that the form of legislative action can make a great deal of difference in terms of political

accountability: repealing a right tends to focus the public's attention in a way that the lawyerly maneuver of jurisdiction stripping does not. *See, e.g.*, 1 WILLIAM BLACKSTONE, COMMENTARIES *136 (explaining that a direct assault on rights "must at once convey the alarm of tyranny throughout the whole kingdom," whereas denying a prisoner access to the courts "is a less public, a less striking, and therefore a more dangerous engine of arbitrary government"). In fact, the Suspension Clause was inspired by Parliament's use of jurisdiction stripping to prevent American prisoners from asserting their statutory and common law rights, *see* PAUL D. HALLIDAY, HABEAS CORPUS: FROM ENGLAND TO EMPIRE 251-53 (2010), and Alexander Hamilton thought that the Suspension Clause's limits on jurisdiction stripping so enhanced the democratic check on wrongful detentions that it rendered a bill of rights unnecessary, *see* THE FEDERALIST No. 84. The Constitution vests in Congress the power to deprive prisoners of judicially enforceable rights, but "requires that it be made to say so unmistakably" by either suspending the writ or repealing the right "so that the people will understand and the political check can operate." Henry M. Hart, Jr., *The Power of Congress to Limit the Jurisdiction of Federal Courts: An Exercise in Dialectic*, 66 HARV. L. REV. 1362, 1399 (1953).

Because Congress has neither suspended the writ nor repealed the statutory basis for Omar's cause of action, we must consider the merits of his claim. I would follow the Supreme Court's suggestion in *Munaf v. Geren* that the FARR Act does not "address[] the transfer of an individual located in Iraq to the Government of Iraq." 553 U.S. at 703 n.6. Omar cannot be "return[ed]" to Iraq for a simple reason: "he is already there." *Id.* The U.S. military arrested him in Iraq, and he was subsequently convicted in an Iraqi court for violating Iraqi law. He now seeks to use the FARR Act to prevent Iraqi

authorities from bringing him to justice, which would effectively "defeat the criminal jurisdiction of a foreign sovereign." *Id.* at 696. Because there is nothing in the FARR Act to suggest that Congress could have intended such a result, I concur in the majority's judgment.