*188
 
 Mr. Justice Mc-LEAN
 

 delivered the opinion of the court.
 

 This is a petition, for a
 
 habeas corpus,
 
 in which the petitioner represents that he is a prisoner, in jail, under the custody of the marshal for the Southern District of the State of New York, by virtue of a warrant issued by the judge of the United Stales for said district, as an alleged fugitive from justice, pursuant to the provisions of the convention signed between the United States and the French government on the 9th of November, 1843.
 

 On a full hearing at chambers, the district judge held “ that the ■evidence produced against the said Metzger was sufficient in law to justify his apprehension and commitment on the charge of forgery, had. the crime been committed within the United States ” ; and the prisoner was “ committed, pursuant to the provisions of the said treaty, to abide the order of the President of the United States.”
 

 In the first article of the convention for the surrender of criminals between the United States and his Majesty, the king of the French, on the 9th of November, 1843, it was “ agreed, that the high contacting parties shall, on requisitions made in their name, through the medium of their respective diplomatic agents, deliver up tp justice persons who, being accused of the crimes enumerated ■in the néxt following article, committed within the jurisdiction of the requiring party, shall seek an asylum, or shall be found within the territories of the other: provided, that this shall be done only when the fact of the commission of the crime shall be so-established, as that the laws of the country in which the fugitive or the person so Accused shall be' found would justify his or her apprehension and commitment for trial, if the crime had been there committed.”
 

 The second article specifies, among other crimes, that of forgery, with which the prisoner was charged.
 

 The third article declares that, ‘‘ on the part of the government of the . United States, the surrender shall be made only by the authority of the executive thereof.”
 

 It is contended that the treaty, without the aid of legislation, does not authorize an afrest of a fugitive from France, however clearly the crime may be proved against him ; — that the treaty provides for a surrender by the executive only,* and not through the instrumentality of the judicial power.
 

 The mode adopted by the executive in the present case
 
 seems to
 
 be the proper one. Under the provisions of the constitution, the treaty, is the supreme law of the land, and, in regard to rights and responsibilities growing out of it, it may become a- subject of judicial cognizance. The surrender of fugitives from justice is a matter of conventional arrangement between states, as no such obligation is imposed.by the laws of nations.
 

 Whether the crime charged is sufficiently proved, and comes within the treaty, are matters for judicial decision ; and the executive, when the late demand of' the Surrender of Metzger was made,
 
 *189
 
 very properly, as we suppose, referred it to thef judgment of a judicial officer. The arrest which followed, and the committal of the accused, subject to the order of the. executive, seems to be the most appropriate, if not the only, mode of. giving effect to the treaty.
 

 The jurisdiction of .this court in this matter is the main question for consideration... As this has been arguéd fully, and as it is supposed- that there is a conflict in the decisions of this court on the subject, a reference will be made to the cases which have been adjudged.
 

 in the United States
 
 v.
 
 Hamilton, 3 Dallas, 17, a writ of
 
 habeas corpus
 
 was issued, on which the defendant, who was charged with high treason, was brought into' court. He had been committed on the warrant of the district judge. A motion was made for his discharge, “ absolutely, or at least upon reasonable bail.” The court held the- prisoner to bail. From the opinion pronpunced, it appears the deliberation of the court was chiefly on the subject of appointing a special circuit court to try certain offences, which, for the reasons assigned, they'refused to do.
 

 Here, it is said, was an original exercise of jurisdiction by the court, as it does hot appear that the district judge was holding a court at the time of the commitment. No objection, seems to have been made to the jurisdiction,. and the court did not consider it. The defendánt was discharged on bail, and' this may be presumed to have been one of the main objects of the writ.
 

 The thirty^third section of the Judiciary . Act of 1789 provides, that, “ upon all arrests in criminal cases, bail shall be admitted, except where the, punishment may be death, in which cases it, shall not be admitted but by the Supreme or a Circuit Court, or by. a justice of the Supreme Court,” &c; Hamilton’s case was within this section, the charge against him being treason, which was punishable with death. The case is not fully reported. The motion to discharge the prisoner is hot noticed in the opinion of the court, and this omission may be accounted for on the ground that they had no power to discharge; But, whether this presumption be well founded or not, it is clear, if this were not, the exercise of an-original jurisdiction, that the court had a right to admit to bail, under the section, and for that purpose to cause the defendant to be brought before them by á
 
 habeas corpus.
 

 Ex parte Burford, 3 Cranch, 448, was a
 
 habeas
 
 corpus, on which the prisoner, who had been committed by the Circuit Court of.this District, was discharged, there being no sufficient cause for the commitment.
 

 Ex parte Bollman & Swartwout, 4 Cranch, 75, gave rise to much discussion on the power of the court to issue a writ of
 
 habeas corpus ;
 
 .and, in their opinion, they consider the subject with great care.
 

 
 *190
 
 ... The chief justice disclaimed all jurisdiction in the case, “not given by the constitution or.laws of the United States.”
 

 He refers to the fourteenth section of the Judiciary Act above cited, in these words :— “ That all the before-mentioned courts of the United States shall have power tti issue writs of
 
 scire
 
 facias,
 
 habeas
 
 corpus, and all other writs, not specially provided for by statute, which may be necessary for the exercise of their respective jurisdictions, and agreeable to the' principles and usages of law. And that either of the justices of the Supreme Court, as well as judges of the District Courts, shall have power to grant writs of
 
 habeas
 
 corpus, for the purpose of an inquiry into the cause of commitment. Provided, that writs of
 
 habeas corpus
 
 shall in no case extend to prisoners in jail, unless where they are in custody under or by color of the authority of the United States, or are committed for trial before some court of 'the same, or are necessary to be brought into' court to testify.”
 

 Bollman and Swartwout had “ been committed by the Circuit Court of the District of Columbia, on a charge of treason against the United Stales.”
 

 The.court held, that the proviso limiting the cases in which the writ should issue extends to the'whole section, and that .they could issue the writ, as it was clearly the exercise of an. appellate jurisdiction ; that “ the revision of a decision of- an inferior court, by which a citizen has been committed to jail,”, is an appellaté power.
 

 In Ex parte Kearney,
 
 “
 
 who was committed by the Circuit Court of the District of Columbia, for an alleged contempt,” 7 Wheat. 38, the court said, that the case of Bollman and Swartwout expressly decided, upon full argument, that this court possessed such an authority, and the question has ever since been considered at rest.” And they held, “that a writ of
 
 habeas corpus
 
 was -not a propér remedy, where a party was committed for a contempt by a court of competent jurisdiction.”
 

 The preceding cases were all referred to in Ex parte Watkins, 3 Peters, 193, and the court said, — “ Without looking into the indictments under which the prosecution against the petitioner was conducted, we are unanimously of opinion that the judgment of a court of general criminal jurisdiction justifies his imprisonment, and that the writ of
 
 habeas corpus
 
 ought not to be awarded.”
 

 Again, in 7 Peters, 568, the case of Ex parte Watkins was brought before the court- on a writ of
 
 habeas
 
 corpus, on the ground that-the prisoner.. “ would not be detained in jail longer than the return day of the process, and he had been brought into court and committed, by the order of the court, to the custody of' the marshal.” This committal was required by the law of Maryland, in force in this District, and it not having been ordered, the court discharged' the petitioner.
 

 In all the above cases, except in that of Hamilton,, this court
 
 *191
 
 sustained' the power to issue the writ of
 
 habeas
 
 corpus, in the exercise' of an appellate jurisdiction under the fourteenth section of the act of 1789 ; and the case of Hamilton was probably sustained-under the thirty-third section of the same act, for the purpose of taking bail. The same doctrine, was maintained in Ex parte Dorr, 3 Howard, 104. In that case the proviso in the fourteenth section was considered as restricting the jurisdiction to cases-where a prisoner is “in custody under or by color of the authority of the. United States, or has been committed for trial before some court of the same, or is necessary to be brought into court to testify.”
 

 The case under consideration was .heard and decided by the district judge at his chambers, and not in court; and the question arises, whether the court can exercise jurisdiction to examine into' the cause of commitipent, under such a státe of facts.
 

 There is no pretence that this can be done, in the nature of an appellate power. This court can exercise no power, in an appellate form, over decisions made at his chambers by a justice of- this court, or a judge of the District Court. • The argument of. the-court, in the case of. Solimán and Swartwout, that the power given to'an individual judge may well be exercised by the court, must riot be considered as asserting an original 'jurisdiction to issue the writ. On'the contrary, the power exercised in that casé was an appellate one, and the jurisdiction Was maintained on that ground.
 

 It may be admitted that there is some refinement in denominating that an appellate, power which is exercised through the instrumentality of a writ of
 
 habeas corpus.
 
 In this form nothing more- can be examined into than the légality of the commitment. However erroneous the judgment of the court may be, either in a civil or criminal case, if - it had jurisdiction, and the defendant has been'duly committed, under an execution or sentence, he cannot be discharged by this writ. In .criminal cases, this court have no revisory power over the decisions of the Circuit Court.; and yet, as appears fromthecas.es cited, “the cause of commitment” in that court may be examined in this, on a writ of
 
 habeas corpus.
 
 And this is done by the exercise of an-appellate powers — a power to inquire merely into the legality of the imprisonment, but not to correct the errors of the judgment of the Circuit Court. This does not conflict with the principles laid down in Marbury
 
 v.
 
 Madison, 1 Cranch, 137. In that case., the court refused to exercise an original jurisdiction by issuing a mandamus to the Secretary of State ; and they held, that “ Congress have not power to give original jurisdiction to the Supreme Court in other cases than those described in the constitution.”
 

 There is no form in which an appellate power can be exercised by this court over the proceedings of a district judge at his chambers. He exercises a special authority, and the law has made no provision for the revision of his judgment. It cannot be brought
 
 *192
 
 before the District or Circuit Court; consequently it cannot, in the nature of an appeal, be brought before' this court. The éiercise of an original jurisdiction only could reach such a proceeding, and this has not been given by Congress, if they have the power to confer it.
 

 Upon the whole, the motioh for the writ of
 
 habeas corpus
 
 in this case is overruled.
 

 Order.
 

 Mr.
 
 Coxe, of counsel for the petitioner, having filed, and read* in open .court the petition of the aforesaid .Nicholas Lucien Metzger, and moved the court for a writ of
 
 habeas
 
 corpus, as prayed for in the aforesaid petition, to be directed to the marshal of the United States for the Southern District of New York, commanding, him forthwith to produce before this honorable court the body of the petitioner, with the cause of his detention, — on consideration whereof, and of the arguments" of counsel thereupon''had, as well against as in support of the said motion, and after mature deliberation thereupon bad, it is now here ordered and adjudged by this court, that the prayer of the petition be denied, and that the said motion be and the same is hereby overruled.