Chief Judge KOZINSKI,
dissenting in part:
1. The federal habeas statute, 28 U.S.C. § 2241, simultaneously provides jurisdiction to hear habeas petitions and remedies for successful ones. See Richard H; Fallon, Jr. & Daniel J. Meltzer, Habeas Corpus Jurisdiction, Substantive Rights, and the War on Terror, 120 Harv. L. Rev. 2029, 2038 (2007). Just because someone in custody files a document styled “habeas petition” doesn’t mean a federal court has jurisdiction to entertain it. Instead, the petitioner must allege a type of claim cognizable on habeas. Cf. Bell v. Wolfish, 441 U.S. 520, 526 n. 6, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) (relying on “an alternative basis for jurisdiction” to adjudicate claims whose cognizability on habeas review the Court found questionable); Stone v. Powell, 428 U.S. 465, 479-80, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) (discussing the connection between “claims ... cognizable in [28 U.S.C.] § 2255 [habeas] proceedings” and “the substantive scope of federal habeas jurisdiction”). In the extradition context, habeas corpus isn’t available to challenge just any aspect of the executive branch’s authority an extraditee seeks to question. Rather, the case law— including our own opinion in Cornejo-Barreto v. Seifert, 218 F.3d 1004, 1009-10 (9th Cir.2000) — makes clear that an extraditee may raise only certain claims on habeas.
Trinidad y Garcia fails to make out a claim cognizable on habeas by invoking the Convention Against Torture (“CAT”) and alleging that, if extradited, he’ll face torture at his destination. What’s been historically cognizable on habeas review in the extradition context is (1) whether the executive branch has the authority to detain the extraditee in the first place and whether the judicial branch has exercised proper jurisdiction over him, all of which has already been litigated and resolved against Trinidad; (2) whether the executive is operating under a valid treaty authorizing extradition, which isn’t disputed here; and (3) whether the extraditee’s crime falls into the political offense exception, which Trinidad doesn’t allege. See, e.g., Fernandez v. Phillips, 268 U.S. 311, 312, 45 S.Ct. 541, 69 L.Ed. 970 (1925) (“[In addition to] general principles relating to extradition, ... there are further limits to habeas corpus---- [H]abeas corpus is available only to inquire whether the magistrate had jurisdiction, whether the offense charged is within the treaty and, by a somewhat liberal extension, whether there was any evidence warranting the finding that there was reasonable ground to believe the accused guilty.”); Neely v. Henkel, 180 U.S. 109, 21 S.Ct. 302, 45 L.Ed. 448 (1901); Oteiza v. Jacobus, 136 U.S. 330, 10 S.Ct. 1031, 34 L.Ed. 464 (1890); see also Cornejo-Barreto, 218 F.3d at 1009-10 (discussing the limited catego *1010 ries of habeas review in the extradition context); John T. Parry, The Lost History of International Extradition Litigation, 43 Va. J. Int’l L. 93, 97 (2002) (same).
There’s absolutely no authority supporting Trinidad’s claim that habeas review is available to challenge the destination to which a detainee is to be extradited based on how he might be treated there. As the D.C. Circuit noted recently, “[t]hose facing extradition traditionally have not been able to maintain habeas claims to block transfer based on conditions in the receiving country. Rather, applying what has been known as the rule of non-inquiry, courts historically have refused to inquire into conditions an extradited individual might face in the receiving country.” Omar v. McHugh, 646 F.3d 13, 19 (D.C.Cir.2011). Trinidad doesn’t identify a single case holding that an extraditee’s challenge to the treatment he might receive at his destination is cognizable on habeas. He therefore fails to present a claim for which the federal habeas statute provides jurisdiction.
INS v. St. Cyr, 533 U.S. 289, 121 S.Ct. 2271, 150 L.Ed.2d 347 (2001), on which my colleagues rely heavily in their various opinions, stands in marked contrast. St. Cyr challenged the executive’s authority to continue to detain and then deport him. Id. at 293, 121 S.Ct. 2271. The Court found abundant historical evidence that such a challenge was traditionally cognizable on habeas review. Id. at 305-10, 121 S.Ct. 2271. There’s no equivalent historical evidence supporting Trinidad’s claim.
Also in contrast is Munaf v. Geren, 553 U.S. 674, 128 S.Ct. 2207, 171 L.Ed.2d 1 (2008), where the Supreme Court found habeas jurisdiction to consider a challenge to petitioners’ transfer based on the treatment they’d receive, then rejected that challenge on the merits. The only claims entertained in Munaf were constitutional ones. Id. at 703-04 n. 6, 128 S.Ct. 2207. In light of the understanding articulated in Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics, 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), that the Constitution itself provides jurisdiction to raise constitutional claims, it was relatively straightforward for the Munaf Court to find statutory habeas jurisdiction as a vehicle for raising constitutional claims. See Munaf, 553 U.S. at 685-88, 128 S.Ct. 2207; see also Martin v. Warden, 993 F.2d 824, 829 (11th Cir.1993) (explaining that, despite the circumscribed nature of judicial review in the extradition context, habeas review still allows consideration of “the constraints of the Constitution”). It’s true that the Court has “construed] broadly the power of a federal district court to consider constitutional claims presented in a petition for writ of habeas corpus.” Stone, 428 U.S. at 478 n. 11, 96 S.Ct. 3037. But Trinidad’s CAT claim is statutory and regulatory, not constitutional. And Munaf does not suggest there’s statutory habeas jurisdiction for claims of this kind.
There’s thus no need to assess the effect of the FARR Act, 8 U.S.C. § 1231 note, or the REAL ID Act, 8 U.S.C. § 1252(a)(4). Both statutes explicitly disavow any congressional intent to create jurisdiction for review of CAT claims outside a limited immigration context. See Munaf, 553 U.S. at 703 n. 6, 128 S.Ct. 2207. Because there’s no statutory jurisdiction for Trinidad’s challenge to begin with, these statutes serve only to confirm that absence of jurisdiction.
St. Cyr urged against “adopting a [statutory] construction that would raise serious constitutional questions” by “precluding] judicial consideration on habeas,” 533 U.S. at 314, 121 S.Ct. 2271, but recognizing our lack of jurisdiction here does no such thing. A serious constitutional question would arise only if we interpreted a statute *1011 to preclude the type of habeas review protected by the Constitution’s Suspension Clause. U.S. Const, art. I, § 9, cl. 2. But, unlike St. Cyr, Trinidad doesn’t present a claim implicating this type of habeas review, because his claim isn’t cognizable on habeas. How Trinidad will be treated by the government of another country after he leaves the United States doesn’t implicate any of his rights under the United States Constitution. In finding his challenge outside the bounds of the federal habeas statute, there’s no judicial consideration to “preclude” and thus no constitutional problem to “avoid.”
The per curiam thus rightly overrules Comejo-Barreto, 218 F.3d at 1015-16, which held in the context of a CAT challenge to extradition that, “since potential extraditees meet the other requirements for habeas standing under 28 U.S.C. § 2241 (2000), a habeas petition is the most appropriate form of action for fugitives seeking review of the Secretary’s extradition decisions.” Comejo-Barreto somehow found jurisdiction in the federal habeas statute via the Administrative Procedure Act (“APA”), 5 U.S.C. § 703. But, as Comejo-Barreto itself acknowledged, “[t]he APA is not an independent grant of jurisdiction.” Cornejo-Barreto, 218 F.3d at 1015 (citing Califano v. Sanders, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)); see Jacques Semmelman, International Decisions: Cornejo-Barreto v. Seifert, 95 Am. J. Int’l L. 435, 438 (2001) (“[T]he APA does not provide a basis for authorizing judicial review of the secretary’s decision to extradite.”). Because there’s no jurisdiction under the habeas statute, there can be no jurisdiction under the APA.
While, as in Mwnaf, we have jurisdiction to hear Trinidad’s due process claim, I agree with the per curiam that the claim is foreclosed by Mwnaf itself, which found that identical claims in the transfer context “do not state grounds upon which habeas relief may be granted.” Munaf, 553 U.S. at 692, 128 S.Ct. 2207.
2. The per curiam offers little explanation for finding jurisdiction to entertain Trinidad’s CAT claim, instead simply asserting that “[t]he writ of habeas corpus historically provide[d] a remedy to non-citizens challenging executive detention.” Per curiam at 956. Judge Thomas’s concurrence, while defending the exercise of jurisdiction at greater length, rests on the similar claim that “[fjederal habeas relief under § 2241 is available as a remedy to non-citizens challenging executive detention” and therefore “provides an avenue of relief to persons, such as Trinidad y Garcia, who are challenging the legality of extradition proceedings.” Thomas cone, at 958. And Judge Tallman, whose discussion of jurisdiction is most extensive, ultimately relies on the analogous assertion that “Trinidad would historically have been entitled to habeas review of his claim to the extent he argues that the [CAT] or the FARR Act bind the authority of the Executive to extradite him.” Tallman dissent at 971.
All of these justifications suffer a fatal flaw: They characterize Trinidad’s claim at too high a level of generality and therefore conflate Trinidad’s particular claim with other claims that are cognizable on habeas review in the extradition context. It’s far too broad to say, as Judge Tallman does, that Trinidad challenges “the authority of the Executive to extradite him.” Id. Trinidad, in fact, challenges something very specific: the destination to which the executive seeks to extradite him, based on his potential treatment there. And Judge Tallman doesn’t point to a single case showing that the scope of habeas review has ever been understood to encompass such a challenge because “[n]o court has yet denied extradition based upon the de *1012 fendant’s anticipated treatment in the requesting country.” Jacques Semmelman, Federal Courts, the Constitution, and the Rule of Non-Inquiry in International Extradition Proceedings, 76 Cornell L. Rev. 1198, 1218 (1991). As the Second Circuit has explained, “consideration of the procedures that will or may occur in the requesting country is not within the purview of a habeas corpus judge.” Ahmad v. Wigen, 910 F.2d 1063, 1066 (2d Cir.1990). That leaves Trinidad beyond the scope of habeas review — and, because the federal habeas statute predicates the exercise of habeas jurisdiction on the existence of a cognizable habeas claim, that also leaves Trinidad beyond the scope of our habeas jurisdiction.
Judge Tallman’s analysis leads to the same conclusion. On page 966-67 of his opinion, he properly characterizes as jurisdictional the key language from Oteiza, 136 U.S. at 334, 10 S.Ct. 1031:
A writ of habeas corpus in a case of extradition cannot perform the office of a writ of error. If the commissioner has jurisdiction of the subject-matter and of the person of the accused, and the offense charged is within the terms of a treaty of extradition, and the commissioner, in arriving at a decision to hold the accused[,] has before him competent legal evidence on which to exercise his judgment as to whether the facts are sufficient to establish the criminality of the accused for the purposes of extradition, such decision of the commissioner cannot be reviewed by a circuit court or by this court, on habeas corpus, either originally or by appeal.
While he notes that judicial review of extradition has expanded since Oteiza, Judge Tallman rightly concludes that “the scope of our habeas review in the extradition context wholly depends on the will of Congress.” Tallman dissent at 967. By “the scope of our habeas review,” he presumably still refers to “the habeas jurisdiction of reviewing courts” he mentioned a page earlier. So, when he ultimately — and, again, rightly — concludes that Trinidad’s challenge falls outside the scope of our habeas review as intended by Congress, that also resolves the jurisdictional question. As one commentator writes about the exact language from Oteiza Judge Tallman quotes, “[t]he [Supreme] Court has repeatedly reaffirmed that these listed issues are the only ones within the scope of a court’s authority on habeas corpus review of a finding of extraditability.” Semmelman, Federal Courts, supra, at 1211.
Starting from a mistaken characterization of Trinidad’s claim leads my colleagues to an equally mistaken conclusion about the role of the FARR and REAL ID Acts. Because they erroneously view habeas jurisdiction over Trinidad’s claim as preexisting and presupposed, they ask the wrong question: whether these statutes have clearly “preclude[d]” or “repealed]” such jurisdiction. Tallman dissent at 968, 970; Thomas cone, at 958-59. But there was no habeas jurisdiction, whether statutory or constitutional, to preclude or repeal in the first place.
Consider In re Metzger, 46 U.S. (5 How.) 176, 12 L.Ed. 104 (1847). After receiving an extradition request, the President referred it to a district judge, who approved Metzger’s extradition. Metzger then filed a habeas petition with the Supreme Court. The Court found that it had no jurisdiction to grant habeas relief. Its reasoning was somewhat technical — the district judge had been acting in chambers rather than exercising Article III judicial power — but the result is instructive for our case: The Court saw no constitutional problem whatsoever in finding the absence of any jurisdiction, whether appellate or original, over Metzger’s habeas petition challenging his extradition. Id. at 191-92. *1013 That’s because extraditees have no free-floating right to challenge their extradition via habeas petition. If an extraditee isn’t challenging one of the few issues deemed by Congress to be suitable for judicial inspection, a federal court lacks jurisdiction over the challenge — and that raises no constitutional problem.
Judge Tallman is quite right that, in Valentine v. United States ex rel. Neidecker, 299 U.S. 5, 57 S.Ct. 100, 81 L.Ed. 5 (1936), the Supreme Court “expressed no hesitation in reviewing ... [the ex-traditees’] claims under its habeas power.” Tallman dissent at 964 n. 3. But that’s because the Valentine extraditees’ challenge fell squarely within the second traditional category of habeas review of extradition set out above: whether the executive branch was operating under a valid treaty authorizing the extradition in question. Here’s how the Valentine Court framed the issue before it: “The question, then, is the narrow one whether the power to surrender the respondents in this instance is conferred by the treaty itself.” Valentine, 299 U.S. at 10, 57 S.Ct. 100. That question fell right in the sweet spot of traditional extradition habeas review, but it’s light-years away from Trinidad’s challenge. Judge Tallman’s heavy reliance on Valentine is entirely misplaced, leaving him with no support for his newfangled theory.
More fundamentally, Judge Tallman criticizes my “cabining of Trinidad’s claim as strictly statutory or regulatory.” Tall-man dissent at 964 n. 3. That’s not my characterization of Trinidad’s CAT claim— it’s Trinidad’s. In his brief before this court, he refers to his “statutory torture claim” and the “federal statutory mandate” on which it relies. So, unlike the question of “constitutional authority” at issue in Valentine, id. (quoting Valentine, 299 U.S. at 6, 57 S.Ct. 100, with emphasis added by Judge Tallman), here we face an explicitly statutory and regulatory challenge. That distinguishes the jurisdictional issue in this case from Valentine — and, as I’ve already discussed, from Munaf, too. See p. 1010 supra.
As Judge Tallman acknowledges, Tall-man dissent at 969 n. 8, his approach produces a circuit split, even as he relies selectively on other circuits to bolster his conclusion. He portrays his position as consistent with the First and Second Circuits in finding that the FARR Act doesn’t “bar habeas review.” Id. at 969 (citing Saint Fort v. Ashcroft, 329 F.3d 191, 200-02 (1st Cir.2003); Wang v. Ashcroft, 320 F.3d 130, 140-42 (2d Cir.2003)). But both of those circuits were deciding immigration cases, not extradition cases; and, in the extradition context, there’s no preexisting “habeas review” to “bar.” Meanwhile, Judge Tallman casually lists as contrary authority the Fourth Circuit’s decision in Mironescu v. Costner, 480 F.3d 664, 674 (4th Cir.2007), tossing it aside because “thé Fourth Circuit explicitly disclaimed any consideration of the Suspension Clause’s effect,” Tallman dissent at 969 n. 8. But, as I’ve explained, the Suspension Clause has no effect here, because there’s no preexisting habeas review available to Trinidad that the FARR or REAL ID Acts might “suspend.”
So, Judge Tallman’s approach — and the approach of my colleagues in finding jurisdiction for Trinidad’s CAT claim — splits with the Fourth Circuit, all on the grounds that the Fourth Circuit didn’t consider the effect of a constitutional provision that plainly has no bearing on our case. Not only does this approach create a split with the Fourth Circuit on extradition, it also splits with the D.C. Circuit, which embraced the Fourth Circuit’s understanding in a decision on detainee transfers abroad. See Omar, 646 F.3d at 18 (citing Mironescu, 480 F.3d at 674-76).
*1014 3. I note the thoughtful views of our colleague on the D.C. Circuit, Judge Griffith, on similar issues that have confronted his court. Starting in Kiyemba v. Obama (Kiyemba II), 561 F.3d 509 (D.C.Cir. 2009), Judge Griffith has asserted in the context of detainee transfers “that jurisdiction to hear the petitioners’ claims against unlawful transfer — a fundamental and historic habeas protection — is grounded in the Constitution.” Id. at 523-34 (Griffith, J., dissenting in part). What concerned Judge Griffith in Kiyemba II was very-different from what’s before our court: He addressed whether the transfer of the prisoners “will result in continued detention on behalf of the United States in a place where the writ does not run.” Id. at 525. Judge Griffith’s concern that the United States would maintain control over the prisoners while evading judicial review doesn’t apply to our case, where the United States seeks to extradite Trinidad and relinquish all control over him. Trinidad doesn’t allege otherwise — indeed, his motivating concern is precisely that he’ll be mistreated once he’s no longer in American custody and instead in Filipino hands.
Judge Griffith expanded on his earlier position with his dissental in Abdah v. Obama, 630 F.3d 1047 (D.C.Cir.2011). In support of his assertion of “the long-established right of a prisoner to question his jailer’s authority to transfer him to a place where it would be difficult or impossible to execute the writ,” Judge Griffith provides the history of habeas challenges to the executive transferring a prisoner beyond the writ’s reach in order to evade habeas jurisdiction. Id. at 1048 (Griffith, J., dissental). None of his examples, however, involves extradition, in which the executive transfers a prisoner abroad, not to evade habeas review, but to deliver him pursuant to an extradition treaty to a country seeking to prosecute him for crimes he allegedly committed there. Judge Griffith’s examples of American colonial state laws demonstrate an extradition exception to the general prohibition on transfers and, accordingly, an exception to the reviewability of such transfers via habeas petition. Id. at 1051.
Most recently, Judge Griffith concurred in Omar, 646 F.3d 13, where he “disagree[d] with the majority’s suggestion that we have no jurisdiction to consider [the transferee’s] claim” because “the Constitution’s guarantee of habeas corpus entitles him to assert any claim that his detention or transfer is unlawful.” Id. at 25 (Griffith, J., concurring in the judgment). Judge Griffith thus finds constitutional habeas jurisdiction to hear CAT claims. But his assertion that there’s constitutional habeas jurisdiction for “any claim” of unlawful detention or transfer suffers from the same flaw that afflicts the analysis of Judges Thomas and Tallman here: It’s too broad. Centuries of extradition case law have carved out the specific types of challenges an extraditee may raise on habeas review. To say an extraditee can find jurisdiction in the federal habeas statute to raise “any claim” would be a radical departure from those centuries of unbroken precedent.
4. While federal habeas jurisdiction is enshrined in a federal statute, the writ of habeas corpus remains a common law writ. And, like all creatures of the common law, it can and should evolve over time. What yesterday may have failed to qualify as a cause of action seeking habeas relief may qualify tomorrow. Because, in the habeas context, a cause of action and the jurisdiction to hear it are inextricably linked, federal habeas jurisdiction also can evolve through common law decision-making.
This raises the question: Even if habeas jurisdiction has never before included the type of claim Trinidad raises, why not start today? That is, why shouldn’t we embrace the evolution of habeas review so *1015 as to encompass a claim that challenges extradition on the basis of the conditions the extraditee may face in the receiving country?
To that question, my colleagues give entirely convincing answers. I need not add to Judge Tallman’s masterful discussion of how superior the executive is to the judiciary in assessing a detainee’s likely treatment in a foreign country and in weighing the foreign policy implications pregnant in every decision to extradite or not to extradite. Tallman dissent at 978-79. Nor need I do more than echo Judge Thomas’s conclusion that “the surrender of a person to a foreign government is within the Executive’s powers to conduct foreign affairs and the executive is Veil situated to consider sensitive foreign policy issues.’ ” Thomas cone, at 961 (quoting Munaf, 553 U.S. at 702, 128 S.Ct. 2207). Nor are these new answers. We explained almost half a century ago that, even as Supreme Court decisions broadened the scope of habeas review of criminal convictions, “[w]e believe such case[s] to be inapposite in the field of international extradition.” Merino v. U.S. Marshal, 326 F.2d 5, 11 (9th Cir.1963); see Semmelman, Federal Courts, supra, at 1229-36 (providing policy reasons for leaving extradition decisions to the executive branch). International relations have become no less delicate since, and we, as federal judges, have become no better at diplomacy.
I’m a firm believer in robust federal habeas review where it’s appropriate. See, e.g., Gantt v. Roe, 389 F.3d 908 (9th Cir.2004); Taylor v. Maddox, 366 F.3d 992 (9th Cir.2004). But the federal habeas statute is not an open-ended invitation for federal judges to join the party whenever they’re invited by someone who happens to be “in custody.” 28 U.S.C. § 2241(c), (d). Petitioning for the Great Writ, like filing most lawsuits, requires a cognizable cause of action. Exercising federal jurisdiction to hear a habeas petition requires the same. Centuries of case law show that Trinidad fails to present such a claim, and my colleagues show why there’s wisdom in that practice. They simply fail to take that teaching to its logical conclusion. I therefore dissent as to Trinidad’s CAT claim, and would order the district court to dismiss that claim for lack of jurisdiction.